Hosmer *v.* Loveland.

HOSMER *vs.* LOVELAND.

Words, spoken or published, which, under ordinary circumstances, would be slanderous or libelous, are held to be privileged when spoken or written on, or in connection with, a lawful occasion; that is, in a legal or judicial proceeding, parliamentary debate, applications, petitions, communications, &c. to executive or legislative departments, the appointing power, &c.

The general rule, however, is subject to this qualification; that in all cases where the object or occasion of the words or writing is redress for an alleged wrong, or a proceeding in a tribunal, or before some individual or associated body of men, such tribunal, individual or body must be vested with authority to render judgment or make a decision in the case, or to entertain the proceeding, in order to give them the protection of privileged communications.

Whenever a requisition is presented to the governor, for the arrest of a fugitive from justice in another state, accompanied by the proper vouchers, according to the act of congress, it is the duty of the executive to cause the fugitive to be arrested, and delivered to the agent appointed to receive him. And, after having issued a warrant for the apprehension of the fugitive, the governor has no power to entertain an application to recall, revoke, or modify such warrant.

Accordingly *held* that an affidavit, made and used in support of such an application, was not a privileged communication.

THIS was an action for a libel. The complaint charged the defendant with composing and publishing of and concerning the plaintiff a certain false, scandalous, malicious and defamatory libel, alleging the plaintiff's character to be bad, and charging him with dishonesty and intemperance, and with being a gambler. The complaint set forth so much of the alleged libel as contained the above imputations, with the usual recitals and innuendos. The answer of the defendant did not deny composing and publishing the alleged libel, but stated the following facts as a defense : That, prior to the commission of the supposed grievances in the complaint mentioned, the plaintiff presented to Washington Hunt, governor of the state of New York, a paper purporting to be a requisition upon the governor of the said state, from the governor of the state of California, for the body of one Hiram True, to be delivered to the said plaintiff, to be by him taken in charge and conveyed to San Francisco in California, to answer to an indictment for larceny alleged in said requisition to have been found against him, said Hiram, at San Francisco aforesaid. That the said Washington Hunt thereupon issued his warrant to certain officers therein named, commanding them to arrest said Hiram True and deliver him over to said plaintiff, to be by him taken in charge and conveyed to San Francisco to answer said indictment. That on or about the time of the committing said alleged grievances in the complaint mentioned, an application was about being made in behalf of said Hiram True, to the governor of the state of New York, to revoke his said warrant so issued by him as aforesaid, on the ground that the plaintiff was an improper person to take said Hiram to San Francisco as aforesaid. That at the request of said Hiram True, the defendant, on or about the 10th of October, 1851, made an affidavit in writing to be used in his behalf, among other affidavits and papers on such application, and for no other purpose whatever. That said affidavit contained the words and expressions stated in the complaint to have been contained in the alleged libel. That said application was made to the governor of the state of New York, at Albany, about the time, or soon after, said affidavit was made as aforesaid, and that on such

Hosmer *v.* Loveland.

application said affidavit was read to the said governor, but was never in any other way published or made public. That the said alleged libel in the complaint mentioned was the said affidavit so made as aforesaid, and not other or different. That the defendant composed and published said affidavit as aforesaid for the purpose aforesaid, believing the same and the matters therein contained to be true, and without any malice towards the plaintiff or any intent to injure him. And the defendant insisted that the said affidavit was privileged, &c. The answer also insisted upon the same facts in mitigation of damages. It also set up, by way of justification for publishing the said supposed libel, that the matters therein charged were true; and in sisted upon the same also in mitigation. The plaintiff's reply denied that the reading of the libel to the governor was the only publication thereof, and denied that the affidavit was privileged, or that it was true. The action was referred, by stipulation and an order entered thereon, to three referees to hear and determine the same. At the trial, which came on before the referees on the 27th day of April, 1853, James Wood, jr. a witness for the plaintiff, was sworn and examined. The plaintiff here produced an affidavit which the counsel for the defendant admitted was made and signed by the defendant, and that it was the same affidavit that contained the libelous matter charged in the complaint. The witness, Wood, then testified as follows: " I first saw this affidavit in the executive chamber at Albany. I read it there. I saw another person looking at it as if reading. This was in the month of September last. It has been in my possession from that day to this." This witness gave further evidence touching the publication of the alleged libel, not necessary to be here stated. The counsel for the plaintiff then read in evidence that part of the affidavit in the complaint charged to be libelous, in the following words, viz: " That this deponent has been acquainted with said Hosmers whilst they resided at or near Avon, when this deponent went to school with them. That the charcter of Charles A. Hosmer while this deponent knew him in this state was bad, and that both of said Hosmers were intemperate ; that this deponent was well acquainted and

had dealings with them in San Francisco, and that their character there was bad, and that Charles A. Hosmer was notoriously in the habit of gambling, and frequenting gambling houses nightly for that purpose. That for the space of about one month, while this deponent was in San Francisco, he slept at the store of Hosmer and True, where he has seen said Charles A. Hosmer take money from the drawer of said firm of C. A. Hosmer & Co. and use the same for the purpose of gambling, and, so far as this deponent saw, he did not account for the same on the books of the concern. That this deponent, seeing the conduct of said Hosmer, and believing that he was acting dishonestly and fraudulently towards said True, deemed it his duty to inform said True of said Hosmer's conduct, in order that he might protect himself and save his property, and he did therefore at once inform said True of what he knew of said Hosmer's conduct, and advise him as a friend to get rid of said Hosmer, if he wanted to save his property and keep good his character, as this deponent was well satisfied that said Hosmer was using the funds of said firm improperly and without accounting for the same; and this deponent further says, that the general character of said C. A. Hosmer in San Francisco was that of a dishonest and intemperate man."

The plaintiff here rested. The defendant then introduced a number of witnesses who gave evidence tending to prove the several matters of defense set forth in the answer, and the plaintiff also produced a number of witnesses who gave evidence tending to rebut the evidence so given on the part of the defendant.

The referees made a report in the following words : " To the supreme court of the state of New York. The undersigned, referees in this action, do certify and report that we have heard the proofs and allegations of the parties, and do find, as questions of fact, 1st. That the communication charged in the complaint in this action as libelous, was not published by the defendant in any manner except as set forth in his answer in this action. 2d. That the said communication was privileged. 3d. That there is no evidence before us of express malice in said publication.

We further certify, as a conclusion of law upon the facts thus found, that the defendant in this action is entitled to judgment for his costs in this action. Dated April 30th, 1853."

Upon this report judgment was entered for the defendant for costs, amounting to $228.81. From which judgment the plaintiff appealed.

*Jas. Wood, Jr.* for the plaintiff.

*L. Farrar,* for the defendant.

*By the Court,* WELLES, J. Whether the paper containing the supposed libelous matter, as shown by the pleadings and evidence, was a privileged communication, is a question of law. The referees have reported as matter of fact, that it was privileged. Whether treated as a question of law or fact is perhaps of little moment in this case, provided their decision be correct as matter of law; since there is no conflict in the evidence in relation to the occasion upon, and the circumstances under, which the paper was composed and published. If it was not privileged, the report was wrong, and the plaintiff was entitled *to recover,* whether there was any express malice or not, on the part of the defendant, in the publication. Where the slanderous or libelous matter is not proved to be true, it is to be taken as false, and the law in such case always implies malice. (*King* v. *Root,* 4 *Wend.* 113.) The referees have not reported upon the question whether the charges were true or false; but have evidently placed their finding upon the ground that the affidavit was a privileged communication. Whether a communication, otherwise slanderous, is privileged, depends upon the occasion and circumstances under which it is made. I fully concur in the general proposition of the defendant's counsel, that words spoken or published, which, under ordinary circumstances would be slanderous or libelous, are held to be privileged when spoken or written on, or in connection with, a lawful occasion; that is, in a legal or judicial proceeding, parliamentary debate, applications,

petitions, communications, &c. to executive or legislative departments, the appointing power, &c.

The general rule, however, is subject to this qualification: that in all cases where the object or occasion of the words or writing is redress for an alleged wrong, or a proceeding in a tribunal, or before some individual or associated body of men, such tribunal, individual or body must be vested with authority to render judgment, or make a decision in the case, or to entertain the proceeding, in order to give them the protection of privileged communications. (*Thorn* v. *Blanchard*, 5 *John.* 508. *King* v. *Root, supra. Howard* v. *Thompson*, 21 *Wend.* 319. *O'Donayhue* v. *McGovern*, 23 *Id.* 26. *Hastings* v. *Lusk*, 22 *Id.* 410. *Fawcett* v. *Charles*, 13 *Id.* 478.) This qualification of the rule runs through all the cases where the question is involved.

Looking at the case before us, in the light of this rule as thus stated, it is impossible to regard the affidavit of the defendant, made for the purpose mentioned, and under the circumstances disclosed by the pleadings and evidence, as a privileged communication. The constitution of the United States provides that " a person charged in any state with treason, felony, or other crime, who shall flee from justice and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime." (*Const. U. S. art.* 4, § 2, *subd.* 2.)

To carry into effect this provision of the constitution, congress passed an act, which was approved on the 12th day of February, 1793, the first section of which provides :· " That whenever the executive authority of any state in the union, or of either of the territories northwest or south of the river Ohio, shall demand any person as a fugitive from justice, of the executive authority of any such state or territory, to which such person shall have fled, and shall moreover produce the copy of an indictment found, or an affidavit made before a magistrate of any state or territory as aforesaid, charging the person so demanded with having committed treason, felony or other crime, certified as authentic by the governor or chief magistrate of the state or ter-

ritory from whence the person so charged fled, it shall be the duty of the executive authority of the state or territory to which such person shall have fled, to cause him or her to be arrested and secured, and notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear. But if no such agent shall appear within six months from the time of the arrest, the prisoner may be discharged. And all costs or expenses incurred in the apprehending, securing, and transmitting such fugitive to the state or territory making such demand, shall be paid by such state or territory."

The 2d section of the same act declares that "any agent, appointed as aforesaid, who shall receive the fugitive into his custody, shall be empowered to transport him or her to the state or territory from which he or she shall have fled. And if any person or persons shall by force set at liberty, or rescue the fugitive from such agent while transporting, as aforesaid, the person or persons so offending shall, on conviction, be fined, not exceeding five hundred dollars, and be imprisoned not exceeding one year." (*U. S. Statutes at Large, vol.* 1, *p.* 302.)

It is entirely clear, we think, that the governor had no power whatever to entertain an application to recall, revoke or modify the warrant which he had issued for the apprehension of True. When a requisition is presented for the arrest of a fugitive from justice, accompanied by the proper vouchers, according to the act of congress, it is the duty of the executive to cause the fugitive to be arrested and delivered to the agent appointed to receive him. True was alleged to be a fugitive from justice from the state of California, and to have fled to this state. The executive authority of California demanded him of the executive of this state, and appointed the plaintiff as its agent to receive him, &c. In obedience to the law, the executive of this state issued his warrant directing the arrest of True, and his delivery to the plaintiff as such agent. The plaintiff was the agent of California, and the governor of this state had no right to inquire into his fitness. The proceeding before him for that purpose, upon

the occasion of which the affidavit containing the alleged libelous matter was made, were *coram non judice,* and void.

The defendant was a volunteer in making the affidavit, and he must defend himself the same as for any other unprivileged communication. The judgment entered on the report of the referees should be reversed, the report set aside, and a new trial ordered, with costs to abide the event.

Ordered accordingly.

[MONROE GENERAL TERM, December 4, 1854. *Johnson, T. R. Strong* and *Welles,* Justices.