31  461
121a 205
31b 461
48ad321

## Perkins *vs.* Mitchell.

It is clearly libelous to publish of another that he is " insane, and a fit person to be sent to the lunatic asylum ;" or that " he is so disordered in his senses as to endanger the persons of other people, if left unrestrained, and that it is dangerous to permit him longer to go at large."

The libelous character of such language will not be destroyed, or diminished, by the fact that the person uttering it is a *physician,* and makes the statement as a professional opinion.

To give to a statement made by a physician, which would otherwise be criminatory and libelous, a privileged character, he must not only utter it as a medical man, but it must be made in the discharge of a duty, and to a person having a corresponding duty in reference to the subject matter.

A complaint alleging the publishing of words charging the plaintiff with being insane, without lawful authority or justification on the part of the defendant, need not aver special damage to the plaintiff. The obvious import and effect of such a charge being degrading and injurious, the court needs no averments to point out its tendency

In England, and in the courts of this state, the rule has been very steadily adhered to which protects parties and witnesses for statements pertinently made by them in the assertion of their rights, or the discharge of their duties as such.

*It seems* this protection is not confined to the trial of issues in suits, or indictments, or to oral examinations, so as to exclude affidavits even if voluntarily made, if otherwise regular and pertinent.

Whenever a person testifies, either voluntarily or under process of subpœna, to matters pertinent and material, in a proceeding before a court or magistrate of competent authority, he is entiled to unqualified protection against any action for defamation by the words thus uttered.

It is not libelous, or actionable as such, for a physician to furnish evidence, either voluntarily or under a subpœna, that another is insane, in a proceeding duly taken under any of the clauses of the statute relative to the safe keeping and care of lunatics.

To sustain a demurrer to a complaint for libel uttered under such circumstances, it is necessary that it should appear distinctly, by the complaint, that the alleged libel was contained in an affidavit made in a proceeding properly and legally instituted under the statute referred to. The complaint must state all the facts which the defendant would be obliged to plead in setting up his privilege ; in order to show that the plaintiff has no cause of action in the publication of a charge which in itself is clearly libelous.

Although, where a man is called to testify, or even makes an affidavit, in a cause depending in a court of competent general or ordinary jurisdiction and proceeding according to the course of the common law, he may not be required to know, or to prove, that all the facts existed, or all the steps had been taken, which were necessary to confer jurisdiction in the particular case,

yet where one intervenes voluntarily, in a special proceeding not known to the common law and not resulting in a judgment according to its forms, he must see that jurisdiction is acquired, and that there is in reality a proceeding in court, before he can claim the privilege of a witness for libelous charges against another

APPEAL from an order made at a special term, overruling a demurrer to the complaint. The complaint was as follows:

*First.* That at the times hereinafter mentioned, and for some time previous thereto, the plaintiff was a resident of the city of Brooklyn, and was engaged in the business of commission merchant and ship chandler, at No. 39 South street, in the city of New York, and was deriving profits and emoluments therefrom, for the support of himself and his family.

*Second.* That on or about the 4th day of December, 1858, at the city of Brooklyn aforesaid, the said defendant, well knowing the premises, published a certain false, malicious and defamatory libel of and concerning this plaintiff, in the words and figures following, to wit:

" *City of Brooklyn, County of Kings, ss.* We, Chauncey L. Mitchell, M. D. and William H. Dudley, M. D. of the city of Brooklyn, in said county, physicians, duly licensed to practice as such, according to the laws of the state of New York, do certify that we have examined into and are acquainted with the state of health and mental condition of Joseph Perkins (this plaintiff meaning) of the city of Brooklyn, in said county, and that he (this plaintiff meaning) is, in our opinion, insane, and a fit person to be sent to the lunatic asylum.

Dated December 4, 1858.

(Signed)          CHAUNCEY L. MITCHELL, M. D.

WILLIAM H. DUDLEY, M. D."

" *County of Kings, ss.* Chauncey L. Mitchell, of the city of Brooklyn, in said county, being duly sworn, says, that he is acquainted with Joseph Perkins, of said city, (the plaintiff meaning,) and that he is disordered in his senses, and has been so for some time past; and that he (the plaintiff meaning) is,

in this deponent's best judgment and belief, so disordered in his senses as to endanger the persons of other people, if left unrestrained, and that it is dangerous to permit him (this plaintiff meaning) longer to go at large.

(Signed)　　　　CHAUNCEY L. MITCHELL, M. D.

Sworn before me this 4th day of December, 1858.

F. Q. DALLON, A. G. HAMMOND,

Justices of the peace, Kings county."

*Third.* That on or about the 4th day of December, 1858, the said defendant presented the said certificate and affidavit to the said justices of the peace, who thereupon, and in consequence thereof, on the same day issued their certain warrant of commitment, a copy whereof was annexed.

*Fourth.* That in pursuance of the precept of the said warrant, the plaintiff was forcibly taken from his own house on the evening of the 4th day of December, 1858, and conveyed to the lunatic asylum in the town of Flatbush, and there imprisoned for the space of four days.

*Fifth.* That by reason of the publication by the defendant of the said false, malicious and defamatory words, the plaintiff had sustained great injury to his good name, fame, credit and character, and that the said business of the plaintiff had been specially and largely injured by the circulation of the report that he was a lunatic, unfit to discharge his duties as a business man, and dangerous to the lives of other people, to the damage of the plaintiff of the sum of $50,000. Wherefore he demanded judgment against the defendant for that sum, with costs.

The defendant demurred generally, on the ground that the complaint did not state facts sufficient to constitute a cause of action.

*A. J. Willard,* for the plaintiff.

*L. Birdseye,* for the defendant.

*By the Court,* EMOTT, J.   The first, and a very material subject of inquiry in this case is, the character of the injury for which this action is brought.   Is it for libel or defamation, or for a malicious prosecution, or for false imprisonment ?  The plaintiff's counsel contends that his complaint is good in either of these aspects.   There is nothing, however, in the case stated by the complaint to sustain a suit against the defendant for a malicious prosecution.   It does not allege that the defendant commenced or instigated the prosecution against the plaintiff, if the proceedings mentioned in the complaint are to be regarded as such ; nor that these proceedings were malicious and without probable cause ; nor that they have been finally terminated. Without these essential elements no action for a malicious prosecution can be maintained.   The complaint is equally deficient in the charges upon which a suit for a false imprisonment would lie.   The defendant was not actually engaged or assisting in the detention of the plaintiff; nor did he even prefer the complaint upon which the latter was restrained of his liberty.   The only part which he is alleged to have taken is the making a certificate and deposition as a part of the proceeding. Besides, it is not alleged that the arrest was illegal, or the process void.   In addition to these considerations, it may be observed that the injury and damage alleged in the complaint is charged to have been sustained exclusively from the publication of defamatory matter affecting the plaintiff in his character and his business.   Clearly this action can be sustained only as an action for a libel, and we shall proceed to consider it as such.

The complaint states that the plaintiff at the time of the publication was a merchant; that the defendant, on the 4th of December, 1858, published of the plaintiff a false, malicious and defamatory libel, which is then set out at length.   It consisted of a certificate signed by the defendant and another person, stating that they, being physicians, " have examined and are acquainted with the plaintiff's health and mental condition, and are of opinion that he is insane and a fit person

Perkins *v.* Mitchell.

to be sent to the lunatic asylum." To this is added an affidavit signed by the defendant alone, to the effect that he is acquainted with the plaintiff, and that the plaintiff " is disordered in his senses, and has been so for some time past ;" and that he is " so disordered in his senses as to endanger the persons of the people, if left unrestrained, and that it is dangerous to permit him longer to go at large." The complaint proceeds to allege that the defendant " presented the said certificate and affidavit to the said justices of the peace," meaning, I presume, two persons whose names appear at the foot of the affidavit as having administered the oath to the defendant; that they, in consequence thereof, issued a warrant by which the plaintiff was forcibly taken and confined in the lunatic asylum for four days. The complaint concludes with the ordinary allegation of damage to the plaintiff from the publication of the libel, both in his character and his business. · The defendant demurred to this complaint; his demurrer was overruled in the city court, and he has appealed to this court from the order overruling it.

It is clearly libelous to publish of another that he is " insane and a fit person to be sent to the lunatic asylum ;" or that " he is so disordered in his senses as to endanger the persons of other people, if left unrestrained, and that it is dangerous to permit him longer to go at large." There is no definition of libel which has ever been received by the courts which will not include such a charge. It is a censorious and ridiculing writing, and if untrue it will ordinarily be inferred to have been made with a mischievous and malicious intent towards the individual named; which are the conditions of Gen. Hamilton's celebrated definition in the *Croswell case,* (3 *John. Cas.* 337, 354; 9 *John.* 215.) It sets the plaintiff in an odious light, and exposes him to public contempt and aversion, which is Blackstone's rule. (3 *Comm.* 125. 4 *id.* 150.) It is unnecessary to multiply definitions; upon this point, the case is clear. (*See Lord Coke in* 5 *Rep.* 125; *Ld. Holt,* 3 *Salk.* 226; *and* 1 *Starkie on Slander,* 153.) Nor is

the libelous character of the language destroyed or diminished by the fact that the defendant is a physician, and makes the statement as a professional opinion. It is rather an aggravation of such a charge that it is backed by the professional skill and authority of a medical man. Can it be doubted that if a physician should, without cause or justification, wantonly write and publish a statement that a man was insane, dangerous and unfit to be at large, and that such was his opinion as a medical man, he would be liable to an action for a libel. There is no rule of law which will protect an individual in the utterance of libelous charges against another, merely because the utterer occupies a professional position and possesses professional skill and experience. To give to a statement made by a physician, which would otherwise be criminatory and libelous, a privileged character, he must not only utter it as a medical man, but it must be made in the discharge of a duty, and to a person who has or is engaged in a corresponding duty in reference to the subject matter. (*Harrison* v. *Bush,* 32 *Eng. L. and E. Rep.* 173. *Van Wyck* v. *Aspinwall,* 17 *N. Y. Rep.* 190.)

It is also erroneous to suppose that a complaint alleging such a publication as that under consideration without lawful authority or justification is defective unless it aver special damage to the plaintiff. We do not purpose to consider how far the present complaint contains averments of special damage, or to what extent the arrest and detention of the plaintiff can be pleaded or proved as damages resulting from the publication of the libel. It is sufficient to say that the only cases in which it is necessary in order to sustain an action for defamation, to allege the manner in which the publication has injured the plaintiff, are cases where it is of such a character that the court cannot see that its tendency and effect would be to defame or degrade the plaintiff, or to render him odious or contemptible. This is the rule given by Chancellor Walworth in the court of errors, in *Cooper* v. *Stone,* (2 *Denio,* 299,) and recognized by all the cases. The obvious import

and effect of such a charge as that now before us is degrading and injurious, and we need no averments to point out its tendency. We must therefore look to another part of the case to sustain this demurrer.

The question upon which the case must ultimately turn is whether the affidavit and certificate of which the plaintiff complains were privileged communications. The defendant contends that they were, and that the facts and circumstances which confer upon them that character sufficiently appear in the complaint. It was upon this ground that the demurrer was mainly, if not entirely, founded.

The authorities, both in England and in the courts of this state, clearly recognize two classes of privileged communications. In one the party is protected from civil or criminal responsibility for his statements, whether spoken or written, although untrue, unless he is proved to have been actuated by a malicious design in making them. To this class of cases belong complaints preferred in the proper quarter against public officers; statements in regard to the character of a servant, given by a master upon inquiry; confidential communications upon matters of business, between parties having a mutual interest; statements made in the discharge of a public or official duty; and other publications of a similar nature. The occasion of the speech or writing, and the position of the person by whom it is uttered, in these instances, repel the presumption or inference of malice which the law justly and wisely attaches to a false and injurious accusation where it is gratuitously made. But the party injured may nevertheless prove, if he is able to do so, that the charge which has been published even upon such an occasion, was not only false in fact, but malicious in motive. If he can establish express malice he may recover as in other cases, notwithstanding the conditional privilege. (*See Thorn* v. *Blanchard,* 5 *John.* 508; *O'Donaghue* v. *McGovern,* 23 *Wend.* 26; *Vanderzee* v. *McGregor,* 12 *Wend.* 545; *Somerville* v. *Hawkins,* 3 *Eng. L. and E. Rep.* 503; *Harrison* v. *Bush,* 32 *id.* 173; *Van Wyck*

y. *Aspinwall*, 17 *N. Y. Rep.* 190 ; *Lewis* v. *Chapman*, 16 *id.* 369.) In *White* v. *Nichols*, (3 *How. U. S. Rep.* 266, 284,) Mr. Justice Daniel endeavors to show that this is the extent to which words spoken or written are protected by any occasion, and that there is no case in which an action for slander or libel will not lie for a false and criminatory statement, however or whenever made, provided the person making it is shown to have been actuated by express malice towards the party accused. The case in which this opinion was delivered was an action for a libel contained in a communication to the secretary of the treasury, asking the removal of a collector of customs. It was therefore a case belonging to the class just referred to, and in which the privilege of the party only will protect him for an unfounded statement if his motive be honest and not malicious. But the reasoning of Judge Daniel's opinion, and the propositions which he deduces where he goes beyond the case in hand, are clearly unsustained by principle or authority. There is another class of communications to which much greater immunity is attached in the law, and for which a party is protected from any action for damages on account of their defamatory character or effect. These are words spoken or written in the due course of parliamentary or judicial proceedings. In the case of judicial proceedings, which is all that is material now, words spoken or written by a party, by counsel, by a judge, a juror or a witness, although false, defamatory and malicious, are not actionable if they were uttered in the due course of the proceeding, in the discharge of a duty, or the prosecution or defense of a right, and were pertinent and material to the matter in hand. It is unquestionable that a person who institutes a groundless proceeding, whether civil or criminal, against another, upon false or defamatory charges, is liable to an action for the injury he occasions. But that the action must be for the malicious complaint, indictment or action, and not for the words. (*See Cowen, J. in O'Donaghue* v. *McGovern*, 23 *Wend.* 26 ; *Starkie on Slander*, 193.) This doctrine is also to be found in the

Perkins *v.* Mitchell.

chancellor's opinion in *Hastings* v. *Lush*, in the court of errors, (22 *Wend.* 410,) and the distinction between this and the other class of privileged cases is very clearly pointed out by him. Where the words are uttered by counsel, or a witness, or a judge, the protection is, if possible, yet more absolute. Unless such persons can be connected directly with the prosecution, as instigating or promoting it with malicious motives, they are entitled to entire immunity for what they say and do in their several places, and in the discharge of their respective duties in a cause. There is but one limitation to their protection, and that is that they should not go beyond the cause and the parties, or what is pertinent and material to them. *Ring* v. *Wheeler*, (7 *Cowen*, 725,) and *Gilbert* v. *The People*, (1 *Denio*, 41;) are instances of the application both of the rule and its limitation; and in the latter case Judge Beardsley defines the doctrine with precision, and recognizes the absolute and unqualified protection of what is said or written in a judicial proceeding, if it be pertinent and material, against an action and against the allegation or proof of malice in the party uttering it. In the case of witnesses who are compellable to appear and to testify, it would indeed be intolerable that their motives and feelings should be scrutinized, and they subjected to liability for statements which they could not avoid making under the direction of the court before whom they appear. Persons testifying in a court of justice are not liable to an action for any statements which they make under the examination to which they are subjected, and in reply to questions permitted by the court or magistrate.

The principles which have now been stated are sustained by the whole series of authorities, from the earliest to the latest. *Lake* v. *King*, (1 *Saund.* 120, 132,) is a case where the proceeding was in parliament, and although somewhat questioned in some later cases, the decision was recognized as law by Ld. Mansfield, in *Astley* v. *Youngs*, (2 *Burr.* 810.) That was a case of an alleged libel contained in an affidavit in a proceeding in the king's bench. Lord Mansfield put it to the counsel

to " show that a matter given in evidence in a court of justice may be prosecuted in a civil action as a libel," and judgment was given for the defendant on demurrer, on the ground of the privileged character of the publication. In the celebrated case of *Rex* v. *Baillie*, (21 *State Trials*, 1,) which was also before Lord Mansfield, Mr. Erskine, in his memorable speech, asserted the rule broadly. " A man," he said, " cannot be guilty of a libel, who presents grievances before a competent jurisdiction, although the facts he presents should be false; he may indeed be indicted for a malicious prosecution, and even then a probable cause would protect him, but he can by no construction be considered as a libeler." Lord Mansfield, in giving judgment, recognizes " the distinction taken at the bar as sound and well founded," and adds, " in a proceeding in a court of justice of the parties nothing can be a libel;" and alluding to an affidavit in a judicial proceeding, as in the case of *Astley* v. *Young*, which he cites, he says, " it was not the subject matter of an action or a prosecution, if it was really so used in the course of a judicial proceeding." There is a case of *Hodgson* v. *Scarlett*, reported in 1 *B. & Ald.* 232, which was an action against that noted barrister, afterwards Ld. Ch. Baron Abinger, for words spoken in an address to the jury in the trial of a cause. In this case the opinions of some of the judges are somewhat qualified and hesitating, as if proof of express malice would take away the privilege. But the point was not distinctly presented, and it may be inferred, I think, from the expressions used by these judges, that proof of the pertinency of a statement used on such an occasion would rebut any proof of malice. The term maliciously is used in a legal sense, as implying that the party had traveled out of his way and his duty, from private enmity, to asperse another whose character was in nowise concerned. In *Ring* v. *Wheeler*, (7 *Cowen*, 725,) already referred to, the question arose on a motion in arrest of judgment, and the court held that they were bound to infer, after verdict, that the words were false, were uttered willfully and maliciously, and were

irrelevant, and therefore refused to arrest the judgment. In *Allen* v. *Crofort,* (2 *Wend.* 515,) a verdict was set aside which had been recovered for words spoken by the defendant before a magistrate, in answer to a question by the plaintiff, who had been arrested by a warrant upon a sworn complaint. The court held, Mr. Justice Marcy giving the opinion, that whether the words were or were not spoken in the course of the proceeding upon the defendant's complaint, or under circumstances to induce him to believe that it was necessary for him to repeat the charge contained in his complaint, should have been submitted to the jury. In *Garr* v. *Selden,* in the court of appeals, (4 *Comst.* 91,) the alleged libel was an affidavit made by the defendant in resisting a motion to strike out a notice annexed to his plea, in an action brought against him by the plaintiff. The court held that if the affidavit were pertinent to the motion, the law did not permit a party to question its truth or innocency in an action for libel, or to allege in that form of action, that it was false or malicious.

These cases leave no room to doubt that in England and in the courts of this state, the rule has been very steadily adhered to which protects parties and witnesses for statements pertinently made by them in the assertion of their rights, or the discharge of their duties as such. I see no reason why this protection should be confined to the trial of issues in suits or indictments, or to oral examinations, so as to exclude affidavits even if voluntarily made, if otherwise regular and pertinent. The phrase employed by the judges and the text writers, in speaking of this sort of privileged communications, is "judicial proceedings." This is not confined to trials of civil actions or indictments, but includes every proceeding before a competent court or magistrate in the due course of law or the administration of justice, which is to result in any determination or action of such court or officer. Thus in *Allen* v. *Crofoot,* (*supra,*) the proceeding was a preliminary examination before a justice of the peace on a complaint for larceny or burglary. In *Astley* v. *Younge,* (2 *Burr.* 807,) also cited

above, the statement complained of was contained in an affidavit made to resist an application to the court of king's bench to compel the justices of Wiltshire to license an innkeeper. In *Captain Baillie's case* the libelous charges were in a memorial submitted to the governor of Greenwich hospital. It is very clear, I think, that the privilege or protection extended by the law to this class of cases must be commensurate with the liability of the party commencing or instigating the proceeding to an action for a malicious prosecution, and that of the person testifying, to an indictment for perjury. Nor is the privilege to be confined to testimony obtained as it were upon compulsion, by legal process. We are in the daily habit of receiving and acting upon statements made in affidavits sworn to by parties who have not been compelled to testify. It is necessary, in many cases, to the due and efficient administration of justice, that such affidavits should be made and the persons making them should be protected; otherwise we should constantly be compelled to issue process and take examinations which we now receive more easily and speedily by the voluntary action of the parties. There might be cases where the necessity of resorting to proceedings apparently *in invitum* to obtain evidence of facts which courts and magistrates receive in affidavits, would seriously hinder if not entirely defeat the ends of justice. I am of opinion that whenever a person testifies, either voluntarily or under process of subpoena, to matters pertinent and material in a proceeding before a court or magistrate of competent authority, he is entitled to unqualified protection against any action for defamation by the words thus uttered.

Having thus determined the principles upon which the rights of these parties depend, we are prepared to consider whether the complaint contains enough to show that the certificate and affidavit for making which this action was brought were privileged and entitled to immunity. We are probably bound to take judicial notice of the character of the proceeding by which the plaintiff was confined. By title 3 of chap-

ter 20, part 1st of the revised statutes, (1 *R. S.* 634,) as amended by the acts of 1838, 1842 and 1844, it is made the duty of the committee of a lunatic who is possessed of property, or his relatives if he have no property, to provide for his confinement if he is disordered in his senses to such an extent as to endanger his own person or property or that of others. If the committee, or the relatives, of such a person neglect to confine him, it is made the duty of the overseers of the poor of the city or town where he belongs to apply to any two justices of the peace of such town, who may, if satisfied that such person ought not to go at large, commit him to some proper place of restraint. Section 8 of the statute authorizes two justices of the city or town to issue their warrant for the apprehension and confinement of a mad person, on their own view or upon the oath and information of others without the application of the overseers. Section 22 of chapter 135 of the laws of 1842 requires the evidence of two reputable physicians, under oath, to the fact of the insanity of any person, before any magistrate or officers shall order the confinement of such person. The argument for the defendant proceeds upon the theory, first that a statement made in the course of a proceeding taken under and according to this statute as evidence to the magistrates of the lunacy of the plaintiff, was a privileged communication, and second that the alleged libels set out in the complaint sufficiently appear to have been uttered by the defendant while testifying or furnishing evidence in such a proceeding. The first proposition I am prepared to agree to. It is not, in my judgment, libelous or actionable as such, for a physician to furnish evidence, either voluntarily or under a subpœna, that another is insane, in a proceeding duly taken under any of the clauses of this statute. If the physicians in this case were parties to a conspiracy to deprive the plaintiff of his liberty, or to set on foot a malicious and groundless prosecution under the forms of law, they may be liable to an action for that. But no action of libel can be maintained for an assertion of the insanity of the plaintiff, contained in an

affidavit made in a proceeding properly and legally instituted under this statute.

To sustain the present demurrer, however, it is necessary that it should appear distinctly by the complaint, that the occasion of uttering the alleged libel was such as I have just mentioned. The complaint must state all the facts which the defendant would be obliged to plead in setting up his privilege, in order to show that the plaintiff has no cause of action in the publication of a charge which in itself is clearly libelous. In this respect I think the defendant's counsel is mistaken in his view of the case. The complaint alleges, as has been already noticed, the publication of a paper consisting of a certificate purporting to be signed by the defendant and another person, and an affidavit signed by the defendant alone, and purporting to be sworn to before two persons who describe themselves as justices of the peace. It proceeds to state that the defendant "presented the said certificate and affidavit to the said justices of the peace," who thereupon issued a warrant, of which a copy is annexed. There is, however, no statement that these persons were justices of the peace, nor that they resided in the city or town with the plaintiff, which is necessary to give them jurisdiction to act. It does not appear how the proceeding was instituted ; whether by the overseers of the poor or by two justices of the peace of their own motion. It is not stated whether the defendant voluntarily furnished the documents set out in the complaint, or whether they were made under the summons or at the request of the magistrates. One portion of the alleged libel is a certificate not under oath, and we have not been shown, nor have I been able to discover, any part of the statute requiring or authorizing such a paper. If the evidence given by the defendant was furnished voluntarily, I apprehend it was necessary for him to satisfy himself, and to show to the court, that the proceeding was regular and the magistrates had jurisdiction of the case. Where a man is called to testify, or even makes an affidavit, in a cause depending in a court of competent general or ordinary jurisdic-

tion and proceeding according to the course of the common law, he may not be required to know or to prove that all the facts existed, or all the steps had been taken, which were necessary to confer jurisdiction in the particular case. But where a man intervenes voluntarily in a special proceeding not known to the common law, and not resulting in a judgment according to its forms, he must see that jurisdiction is acquired, and that there is in reality a proceeding in court, before he can claim the privilege of a witness for libelous charges against another. I am of opinion that the complaint in this action does not contain enough to show that the libelous publication which it sets forth was uttered in the course of a judicial proceeding duly instituted before a magistrate who had jurisdiction, and that therefore the demurrer was properly overruled, and the order appealed from should be affirmed, with costs.

[DUTCHESS GENERAL TERM, May 14, 1860. *Lott, Emott* and *Brown,* Justices.]