## GULFSTREAM AEROSPACE CORP. *v.* MAYACAMAS CORP.

No. 86–1329.   Argued December 7, 1987—Decided March 22, 1988

MARSHALL, J., delivered the opinion of the Court, in which all other Members joined, except KENNEDY, J., who took no part in the consideration or decision of the case. SCALIA, J., filed a concurring opinion, *post*, p. 290.

*Elliot L. Bien* argued the cause and filed briefs for petitioner.

*Gregory H. Ward* argued the cause for respondent. With him on the brief was *James H. A. Pooley*.

JUSTICE MARSHALL delivered the opinion of the Court.

The primary issue in this case is whether a district court order denying a motion to stay or dismiss an action when a similar suit is pending in state court is immediately appealable.

I

Petitioner Gulfstream Aerospace Corporation and respondent Mayacamas Corporation entered into a contract under which respondent agreed to purchase an aircraft manufactured by petitioner. Respondent subsequently refused to make payments due, claiming that petitioner, by increasing

the production and availability of its aircrafts, had frustrated respondent's purpose in the transaction, which was to sell the aircraft when demand was high. Petitioner thereupon filed suit against respondent for breach of contract in the Superior Court of Chatham County, Georgia. Respondent, declining to remove this action to federal court, filed both an answer and a counterclaim. In addition, approximately one month after the commencement of petitioner's state-court suit, respondent filed a diversity action against petitioner in the United States District Court for the Northern District of California. This action alleged breach of the same contract that formed the basis of petitioner's state-court suit.

Petitioner promptly moved for a stay or dismissal of the federal-court action pursuant to the doctrine of *Colorado River Water Conservation Dist.* v. *United States*, 424 U. S. 800 (1976). In *Colorado River*, we held that in "exceptional" circumstances, a federal district court may stay or dismiss an action solely because of the pendency of similar litigation in state court. *Id.*, at 818; see *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.*, 460 U. S. 1, 13–19 (1983).[1] Petitioner argued that the circumstances of this case supported a stay or dismissal of the federal-court action under *Colorado River*. The District Court disagreed. Finding that "the facts of this case fall short of those necessary to justify" the discontinuance of a federal-court proceeding under *Colorado River*, the District Court denied petitioner's motion. See No. C 85–20658 RPA (ND Cal., Jan. 24, 1986).

Petitioner filed a notice of appeal with the United States Court of Appeals for the Ninth Circuit, alleging that the

---

[1] The factors to be considered in determining whether any exceptional circumstances exist include the relative comprehensiveness, convenience, and progress of the state-court and federal-court actions. See, *e. g.*, *Arizona* v. *San Carlos Apache Tribe*, 463 U. S. 545, 570 (1983).

Court of Appeals had jurisdiction over the appeal under either 28 U. S. C. § 1291[2] or 28 U. S. C. § 1292(a)(1).[3] Petitioner also requested the Court of Appeals, in the event it found that neither of these sections provided appellate jurisdiction, to treat the notice of appeal as an application for a writ of mandamus, brought pursuant to the All Writs Act, 28 U. S. C. § 1651,[4] and to grant the application. The Court of Appeals dismissed the appeal for lack of jurisdiction, holding that neither § 1291 nor § 1292(a)(1) allowed an immediate appeal from the District Court's order. 806 F. 2d 928, 929–930 (1987).[5] The Court of Appeals then declined to treat petitioner's notice of appeal as an application for mandamus on the ground that the District Court's order would not cause "serious hardship or prejudice" to petitioner. *Id.*, at 930. Finally, the Court of Appeals stated that even if the notice of appeal were to be treated as an application for mandamus, petitioner did not have a right to the writ because "[i]t was well within the district court's discretion to deny" petitioner's motion. *Id.*, at 930–931.

---

[2] Section 1291 provides, in pertinent part:

"The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . except where a direct review may be had in the Supreme Court."

[3] Section 1292(a)(1) provides, in pertinent part:

"[T]he courts of appeals shall have jurisdiction of appeals from:

"(1) Interlocutory orders of the district courts of the United States . . . or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court."

[4] The All Writs Act provides, in pertinent part:

"The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

[5] One judge dissented from the dismissal for lack of jurisdiction. He stated that the District Court's order was appealable under § 1292(a)(1). See 806 F. 2d, at 931 (Sneed, J.). He then noted that he would have affirmed the order. See *ibid.*

We granted certiorari, 481 U. S. 1068 (1987), to resolve a division in the Circuits as to whether a district court's denial of a motion to stay litigation pending the resolution of a similar proceeding in state court is immediately appealable.[6] We now affirm.

## II

Petitioner's principal contention in this case is that the District Court's order denying the motion to stay or dismiss the federal-court litigation is immediately appealable under § 1291. That section provides for appellate review of "final decisions" of the district courts. This Court long has stated that as a general rule a district court's decision is appealable under this section only when the decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin* v. *United States*, 324 U. S. 229, 233 (1945).[7] The order at issue in this case has no such effect: indeed, the order ensures that litigation will continue in the District Court. In *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U. S. 541 (1949), however, we recognized a "small

---

[6] Compare 806 F. 2d 928 (CA9 1987) (case below) (holding that a district court's denial of a motion to stay an action pending resolution of a state-court proceeding is not immediately appealable), with *Microsoftware Computer Systems, Inc.* v. *Ontel Corp.*, 686 F. 2d 531 (CA7 1982) (holding that a district court's denial of such a motion is immediately appealable under § 1292(a)(1)).

[7] Justice Frankfurter, speaking for a unanimous Court, explained the rationale for this rule in *Cobbledick* v. *United States*, 309 U. S. 323, 325 (1940):

"Since the right to a judgment from more than one court is a matter of grace and not a necessary ingredient of justice, Congress from the very beginning has, by forbidding piecemeal disposition on appeal of what for practical purposes is a single controversy, set itself against enfeebling judicial administration. Thereby is avoided the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment. To be effective, judicial administration must not be leaden-footed. Its momentum would be arrested by permitting separate reviews of the component elements in a unified cause."

class" of decisions that are appealable under § 1291 even though they do not terminate the underlying litigation. *Id.*, at 546. We stated in *Cohen* that a district court's decision is appealable under § 1291 if it "finally determine[s] claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Ibid.* Petitioner asserts that the District Court's decision in this case falls within *Cohen*'s "collateral order" doctrine.

Since *Cohen*, we have had many occasions to revisit and refine the collateral-order exception to the final-judgment rule. We have articulated a three-pronged test to determine whether an order that does not finally resolve a litigation is nonetheless appealable under § 1291. See *Coopers & Lybrand* v. *Livesay*, 437 U. S. 463 (1978); see also, *e. g.*, *Richardson-Merrell Inc.* v. *Koller*, 472 U. S. 424, 431 (1985); *Firestone Tire & Rubber Co.* v. *Risjord*, 449 U. S. 368, 375 (1981). First, the order must "conclusively determine the disputed question." *Coopers & Lybrand* v. *Livesay*, 437 U. S., at 468. Second, the order must "resolve an important issue completely separate from the merits of the action." *Ibid.* Third and finally, the order must be "effectively unreviewable on appeal from a final judgment." *Ibid.* (footnote omitted). If the order at issue fails to satisfy any one of these requirements, it is not appealable under the collateral-order exception to § 1291.

This Court held in *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.*, 460 U. S. 1 (1983), that a district court order granting a stay of litigation pursuant to *Colorado River* meets each of the three requirements of the collateral-order doctrine and therefore is appealable under § 1291. 460 U. S., at 11–13. In applying the collateral-order doctrine, we found that an order refusing to proceed with litigation because of the pendency of a similar action in state court satisfies the second and third prongs of the test.

We stated that such an order "plainly presents an important issue separate from the merits" and that it would be "unreviewable if not appealed now" because once the state court has decided the issues in the litigation, the federal court must give that determination res judicata effect. *Id.*, at 12 (footnote omitted). The Court gave more extended treatment to the first requirement of the collateral-order doctrine that the order "conclusively determine the disputed question." We contrasted two kinds of nonfinal orders: those that are "'inherently tentative,'" *id.*, at 12, n. 14, quoting *Coopers & Lybrand* v. *Livesay*, *supra*, at 469, n. 11, and those that, although technically amendable, are "made with the expectation that they will be the final word on the subject addressed," 460 U. S., at 12, n. 14. We used the order challenged in *Coopers & Lybrand* v. *Livesay*, *supra*, which denied certification of a class, as an example of the kind of order that is inherently tentative because a district court ordinarily would expect to reassess and revise such an order in response to events occurring "in the ordinary course of litigation." *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.*, *supra*, at 13, n. 14. We then stated that an order granting a stay of litigation in federal court pursuant to the doctrine of *Colorado River* was not of this tentative nature. An order granting a *Colorado River* stay, we noted, "necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case" because a district court may enter such an order only if it has full confidence that the parallel state proceeding will "be an adequate vehicle for the complete and prompt resolution of the issues between the parties." 460 U. S., at 28; see *id.*, at 13. Given that a district court normally would expect the order granting the stay to settle the matter for all time, the "conclusiveness" prong of the collateral-order doctrine is satisfied and the order is appealable under § 1291.

Application of the collateral-order test to an order denying a motion to stay or dismiss an action pursuant to *Colorado*

*River*, however, leads to a different result. We need not decide whether the denial of such a motion satisfies the second and third prongs of the collateral-order test—the separability of the decision from the merits of the action and the reviewability of the decision on appeal from final judgment—because the order fails to meet the initial requirement of a conclusive determination of the disputed question. A district court that denies a *Colorado River* motion does not "necessarily contemplate" that the decision will close the matter for all time. In denying such a motion, the district court may well have determined only that it should await further developments before concluding that the balance of factors to be considered under *Colorado River*, see n. 1, *supra*, warrants a dismissal or stay. The district court, for example, may wish to see whether the state-court proceeding becomes more comprehensive than the federal-court action or whether the former begins to proceed at a more rapid pace. Thus, whereas the granting of a *Colorado River* motion necessarily implies an expectation that the state court will resolve the dispute, the denial of such a motion may indicate nothing more than that the district court is not completely confident of the propriety of a stay or dismissal at that time. Indeed, given both the nature of the factors to be considered under *Colorado River* and the natural tendency of courts to attempt to eliminate matters that need not be decided from their dockets, a district court usually will expect to revisit and reassess an order denying a stay in light of events occurring in the normal course of litigation. Because an order denying a *Colorado River* motion is "inherently tentative" in this critical sense— because it is not "made with the expectation that [it] will be the final word on the subject addressed"—the order is not a conclusive determination within the meaning of the collateral-order doctrine and therefore is not appealable under § 1291.

## III

Petitioner argues in the alternative that the District Court's order in this case is immediately appealable under § 1292(a)(1), which gives the courts of appeals jurisdiction of appeals from interlocutory orders granting or denying injunctions. An order by a federal court that relates only to the conduct or progress of litigation before that court ordinarily is not considered an injunction and therefore is not appealable under § 1292(a)(1). See *Switzerland Cheese Assn., Inc.* v. *E. Horne's Market, Inc.*, 385 U. S. 23, 25 (1966); *International Products Corp.* v. *Koons*, 325 F. 2d 403, 406 (CA2 1963) (Friendly, J.). Under the *Enelow-Ettelson* doctrine, however, certain orders that stay or refuse to stay judicial proceedings are considered injunctions and therefore are immediately appealable. Petitioner asserts that the order in this case, which denied a motion for a stay of a federal-court action pending the resolution of a concurrent state-court proceeding, is appealable under § 1292(a)(1) pursuant to the *Enelow-Ettelson* doctrine.

The line of cases we must examine to resolve this claim began some 50 years ago, when this Court decided *Enelow* v. *New York Life Ins. Co.*, 293 U. S. 379 (1935). At the time of that decision, law and equity remained separate jurisprudential systems in the federal courts. The same judges administered both these systems, however, so that a federal district judge was both a chancellor in equity and a judge at law. In *Enelow*, the plaintiff sued at law to recover on a life insurance policy. The insurance company raised the affirmative defense that the policy had been obtained by fraud and moved the District Court to stay the trial of the law action pending resolution of this equitable defense. The District Court granted this motion, and the plaintiff appealed. This Court likened the stay to an injunction issued by an equity court to restrain an action at law. The Court stated:

"[T]he grant or refusal of . . . a stay by a court of equity of proceedings at law is a grant or refusal of an injunction

within the meaning of [the statute.] And, in this aspect, it makes no difference that the two cases, the suit in equity for an injunction and the action at law in which proceedings are stayed, are both pending in the same court, in view of the established distinction between 'proceedings at law and proceedings in equity in the national courts . . . .'

. . . . .

"It is thus apparent that when an order or decree is made . . . requiring, or refusing to require, that an equitable defense shall first be tried, the court, exercising what is essentially an equitable jurisdiction, in effect grants or refuses an injunction restraining proceedings at law precisely as if the court had acted upon a bill of complaint in a separate suit for the same purpose." *Id.*, at 382–383.

The Court thus concluded that the District Court's order was appealable under § 1292(a)(1).

In *Ettelson* v. *Metropolitan Life Ins. Co.*, 317 U. S. 188 (1942), the Court reaffirmed the rule of *Enelow*, notwithstanding that the Federal Rules of Civil Procedure had fully merged law and equity in the interim. The relevant facts of *Ettelson* were identical to those of *Enelow*, and the Court responded to them in the same fashion. In response to the argument that the fusion of law and equity had destroyed the analogy between the stay ordered in the action and an injunction issued by a chancellor of a separate proceeding at law, the Court stated only that the plaintiffs were "in no different position than if a state equity court had restrained them from proceeding in the law action." 317 U. S., at 192. Thus, the order granting the stay was held to be immediately appealable as an injunction.

The historical analysis underlying the results in *Enelow* and *Ettelson* has bred a doctrine of curious contours. Under the *Enelow-Ettelson* rule, most recently restated in *Balti-*

*more Contractors, Inc.* v. *Bodinger*, 348 U. S. 176 (1955), an order by a federal court staying or refusing to stay its own proceedings is appealable under § 1292(a)(1) as the grant or denial of an injunction if two conditions are met. First, the action in which the order is entered must be an action that, before the merger of law and equity, was by its nature an action at law. Second, the order must arise from or be based on some matter that would then have been considered an equitable defense or counterclaim. If both conditions are satisfied, the historical equivalent of the modern order would have been an injunction, issued by a separate equity court, to restrain proceedings in an action at law. If either condition is not met, however, the historical analogy fails. When the underlying suit is historically equitable and the stay is based on a defense or counterclaim that is historically legal, the analogy fails because a law judge had no power to issue an injunction restraining equitable proceedings. And when both the underlying suit and the defense or counterclaim on which the stay is based are historically equitable, or when both are historically legal, the analogy fails because when a chancellor or a law judge stayed an action in his own court, he was not issuing an injunction, but merely arranging matters on his docket. Thus, unless a stay order is made in a historically legal action on the basis of a historically equitable defense or counterclaim, the order cannot be analogized to a premerger injunction and therefore cannot be appealed under § 1292(a)(1) pursuant to the *Enelow-Ettelson* doctrine.

The parties in this case dispute whether the *Enelow-Ettelson* rule makes the District Court's decision to deny a stay immediately appealable under § 1292(a)(1). Both parties agree that an action for breach of contract was an action at law prior to the merger of law and equity. They vigorously contest, however, whether the stay of an action pending the resolution of similar proceedings in a state court is equitable in the requisite sense. Petitioner relies primarily on the decision of the United States Court of Appeals for the

Seventh Circuit in *Microsoftware Computer Systems, Inc.* v. *Ontel Corp.*, 686 F. 2d 531 (1982). That court held that a stay issued under *Colorado River* is based on the policy of avoiding "the unnecessary and wasteful duplication of lawsuits," which is historically an equitable defense. 686 F. 2d, at 536. Respondent, on the other hand, urges us to adopt the reasoning of the Ninth Circuit in this case. In its decision, the court below drew a distinction between motions that raised equitable "defenses" and motions that raised equitable "considerations." 806 F. 2d, at 929–930. The court held that a motion for a stay pursuant to *Colorado River* was based only on equitable considerations and that the *Enelow-Ettelson* rule therefore did not apply.[8]

We decline to address the issue of appealability in these terms; indeed, the sterility of the debate between the parties illustrates the need for a more fundamental consideration of the precedents in this area. This Court long has understood that the *Enelow-Ettelson* rule is deficient in utility and sense. In the two cases we have decided since *Ettelson* relating to the rule, we criticized its perpetuation of "outmoded procedural differentiations" and its consequent tendency to produce incongruous results. *Baltimore Contractors, Inc.* v. *Bodinger, supra*, at 184; see *Morgantown* v. *Royal Ins. Co.*, 337 U. S. 254, 257–258 (1949). We refrained then from overruling the *Enelow* and *Ettelson* decisions,[9] but today we take

---

[8] Accord, *Gold* v. *Johns-Manville Sales Corp.*, 723 F. 2d 1068, 1073 (CA3 1983) (holding that stays issued to avoid duplicative litigation are not based on equitable defenses and therefore are not appealable under § 1292(a)(1)); *Andrews* v. *Southern Discount Co. of Georgia*, 662 F. 2d 722, 724 (CA11 1981) (same); *Jackson Brewing Co.* v. *Clarke*, 303 F. 2d 844, 846 (CA5) (same), cert. denied, 371 U. S. 891 (1962).

[9] A dissenting opinion in *Morgantown* accused the majority of having overruled *Enelow* and *Ettelson*. See *Morgantown* v. *Royal Ins. Co.*, 337 U. S., at 261–263 (Black, J., dissenting). The Court in *Baltimore Contractors*, however, interpreted *Morgantown* as having left the *Enelow-Ettelson* doctrine intact and itself declined to overturn the rule. See *Baltimore Contractors, Inc.* v. *Bodinger*, 348 U. S., at 184–185.

that step.   A half century's experience has persuaded us, as
it has persuaded an impressive array of judges and commen-
tators, that the rule is unsound in theory, unworkable and ar-
bitrary in practice, and unnecessary to achieve any legitimate
goals.

As an initial matter, the *Enelow-Ettelson* doctrine is, in
the modern world of litigation, a total fiction.   Even when
the rule was announced, it was artificial.   Although at that
time law and equity remained two separate systems, they
were administered by the same judges.   When a single offi-
cial was both chancellor and law judge, a stay of an action at
law on equitable grounds required nothing more than an
order issued by the official regulating the progress of the liti-
gation before him, and the decision to call this order an in-
junction just because it would have been an injunction in a
system with separate law and equity judges had little justifi-
cation.   With the merger of law and equity, which was ac-
complished by the Federal Rules of Civil Procedure, the
practice of describing these stays as injunctions lost all con-
nection with the reality of the federal courts' procedural sys-
tem.   As Judge Charles Clark, the principal draftsman of the
Rules, wrote:

> "[W]e lack any rationale to explain the concept of a judge
> enjoining himself when he merely decides upon the
> method he will follow in trying the case.   The metamor-
> phosis of a law judge into a hostile chancellor on the
> other 'side' of the court could not have been overclear to
> the lay litigant under the divided procedure; but if now
> without even that fictitious sea change one judge in one
> form of action may split his judicial self at one instant
> into two mutually antagonistic parts, the litigant surely
> will think himself in Alice's Wonderland." *Beaunit
> Mills, Inc.* v. *Eday Fabric Sales Corp.,* 124 F. 2d 563,
> 565 (CA2 1942).

The *Enelow* rule had presupposed two different systems of
justice administered by separate tribunals, even if these tri-

bunals were no more than two "sides" to the same court; with the abandonment of that separation, the premise of the rule disappeared. The doctrine, and the distinctions it drew between equitable and legal actions and defenses, lost all moorings to the actual practice of the federal courts.

The artificiality of the *Enelow-Ettelson* doctrine is not merely an intellectual infelicity; the gulf between the historical procedures underlying the rule and the modern procedures of federal courts renders the rule hopelessly unworkable in operation. The decisions in *Enelow* and *Ettelson* treated as straightforward the questions whether the underlying suit, on the one hand, and the motion for a stay, on the other, would properly have been brought in a court of equity or in a court of law. Experience since the merger of law and equity, however, has shown that both questions are frequently difficult and sometimes insoluble. Suits that involve diverse claims and request diverse forms of relief often are not easily categorized as equitable or legal. As one Court of Appeals complained in handling such a suit, *"Enelow-Ettelson* is virtually impossible to apply to a complaint . . . in which the averments and prayers are a purée of legal and equitable theories and of claims that had no antecedents in the old bifurcated system." *Danford* v. *Schwabacher*, 488 F. 2d 454, 456 (CA9 1973). Actions for declaratory judgments are neither legal nor equitable, and courts have therefore had to look to the kind of action that would have been brought had Congress not provided the declaratory judgment remedy. Thus, the rule has placed courts "in the unenviable position not only of solving modern procedural problems by the application of labels which have no currency, but also of considering the nature of law suits which were never brought." *Diematic Manufacturing Corp.* v. *Packaging Industries, Inc.*, 516 F. 2d 975, 978 (CA2), cert. denied, 423 U. S. 913 (1975). The task of characterizing stays as based in either law or equity has proved equally intractable. In an early case applying the doctrine, for example, this Court held that

a stay of an action at law pending arbitration is appealable as an injunction because "the special defense setting up the arbitration agreement is an equitable defense." *Shanferoke Coal & Supply Corp.* v. *Westchester Service Corp.*, 293 U. S. 449, 452 (1935). But as one Court of Appeals has noted, a chancellor could not have enforced an arbitration agreement and, correlatively, could not have stayed a suit at law pending arbitration. See *Olson* v. *Paine, Webber, Jackson & Curtis, Inc.*, 806 F. 2d 731, 735 (CA7 1986), citing, *e. g.*, J. Story, Commentaries on Equity Pleadings § 804 (J. Gould 10th rev. ed. 1892). More recently, lower courts have differed as to whether a stay pending the completion of administrative proceedings is based on an equitable defense. Compare *H. W. Caldwell & Son, Inc.* v. *United States ex rel. John H. Moon & Sons, Inc.*, 407 F. 2d 21, 22 (CA5 1969), with *Pepper* v. *Miani*, 734 F. 2d 1420, 1422 (CA10 1984). The conflict regarding the proper characterization of *Colorado River* stays is just one more example of the confusion that results from requiring courts to assign obsolete labels to orders that may or may not have an analogue in the bifurcated system of equity and law.

Most important, the *Enelow-Ettelson* doctrine is "divorced from any rational or coherent appeals policy." *Lee* v. *Ply\*Gem Industries, Inc.*, 193 U. S. App. D. C. 112, 115, 593 F. 2d 1266, 1269 (footnote omitted), cert. denied, 441 U. S. 967 (1979). Under the rule, appellate jurisdiction of orders granting or denying stays depends upon a set of considerations that in no way reflects or relates to the need for interlocutory review. There is no reason to think that appeal of a stay order is more suitable in cases in which the underlying action is at law and the stay is based on equitable grounds than in cases in which one of these conditions is not satisfied. The rule's focus on historical distinctions thus produces arbitrary and anomalous results. See *Baltimore Contractors, Inc.* v. *Bodinger*, 348 U. S., at 184 (noting the "incongruity of taking jurisdiction from a stay in a law type

[proceeding] and denying jurisdiction in an equity type proceeding"). Two orders may involve similar issues and produce similar consequences, and yet one will be appealable whereas the other will not.[10]

For these reasons, the lower federal courts repeatedly have lambasted the *Enelow-Ettelson* doctrine. The rule has been called "a remnant from the jurisprudential attic," *Danford* v. *Schwabacher, supra,* at 455, "an anachronism wrapped up in an atavism," *Hartford Financial Systems, Inc.* v. *Florida Software Services, Inc.*, 712 F. 2d 724, 727 (CA1 1983), and a "Byzantine peculiarit[y]," *New England Power Co.* v. *Asiatic Petroleum Corp.*, 456 F. 2d 183, 189 (CA1 1972). With the exception of the Federal Circuit, which apparently has not yet confronted an *Enelow-Ettelson* appeal, every Circuit is on record with criticism of the doctrine.[11] One Circuit Judge has urged his court to reject

---

[10] The tendency of the *Enelow-Ettelson* rule to produce bizarre outcomes is illustrated by the decision in *Travel Consultants, Inc.* v. *Travel Management Corp.*, 125 U. S. App. D. C. 108, 367 F. 2d 334 (1966), cert. denied, 386 U. S. 912 (1967). In that case, the plaintiff brought suit for specific performance, the defendant counterclaimed for damages for breach of contract, and the trial court stayed its own proceedings pending arbitration. When the defendant challenged the stay order, the Court of Appeals decided that it had jurisdiction to review the "part" of the order staying the legal counterclaim, but did not have jurisdiction to review the "part" of the order staying the equitable claim for specific performance. The Court of Appeals recognized that this result was anomalous, but concluded correctly that it was compelled by this Court's decisions.

[11] See, *e. g., Langley* v. *Colonial Leasing Co. of New England*, 707 F. 2d 1, 2, n. 2, 5 (CA1 1983); *Standard Chlorine of Delaware, Inc.* v. *Leonard*, 384 F. 2d 304, 307–309 (CA2 1967); *Nascone* v. *Spudnuts, Inc.*, 735 F. 2d 763, 767–770 (CA3 1984); *Chapman* v. *International Ladies' Garment Workers' Union*, 401 F. 2d 626, 628 (CA4 1968); *Wallace* v. *Norman Industries, Inc.*, 467 F. 2d 824, 827 (CA5 1972); *Mansbach* v. *Prescott, .Ball & Turben*, 598 F. 2d 1017, 1022–1023 (CA6 1979); *Matterhorn, Inc.* v. *NCR Corp.*, 763 F. 2d 866, 870–871 (CA7 1985); *Mellon-Bank, N. A.* v. *Pritchard-Keang Nam Corp.*, 651 F. 2d 1244, 1247–1248 (CA8 1981); *Mediterranean Enterprises, Inc.* v. *Ssangyong Corp.*, 708 F. 2d 1458, 1462, n. 3 (CA9 1983); *Pepper* v. *Miani*, 734 F. 2d 1420, 1421 (CA10 1984); *Miller* v. *Drexel Burnham Lambert, Inc.*, 791 F. 2d 850, 853, n. 3 (CA11 1986)

the doctrine outright. See *Mar-Len of Louisiana, Inc.* v. *Parsons-Gilbane*, 732 F. 2d 444, 445–447 (CA5 1984) (Rubin, J., dissenting). Although a majority of the panel declined to do so, it agreed that the *Enelow-Ettelson* rule was "'artificial,'" "'medieval,'" and "'outmoded.'" 732 F. 2d., at 445, n. 1 (citations omitted). Another Circuit Judge, in a majority opinion, recently wrote an extensive and scholarly critique of the doctrine and concluded only with great reluctance that repudiating the doctrine would be improper. *Olson* v. *Paine, Webber, Jackson & Curtis, Inc., supra,* at 733–742 (Posner, J.).

Commentators have been no less scathing in their evaluations of the *Enelow-Ettelson* rule. Professor Moore and his collaborators have noted the difficulty of applying archaic labels to modern actions and defenses and expressed the wish that "the Supreme Court will accept the first opportunity offered to decide that the reason for the *Enelow-Ettelson* rule having ceased, the rule is no more." 9 J. Moore, B. Ward, & J. Lucas, Moore's Federal Practice ¶ 110.20[3], p. 245 (1987). Professor Wright and his collaborators have gone further, arguing that the extensive experience that the Courts of Appeals have had in attempting to rationalize and apply the rule would justify them in rejecting it. 16 C. Wright, A. Miller, E. Cooper, & E. Gressman, Federal Practice and Procedure § 3923, p. 65 (1977).

The case against perpetuation of this sterile and antiquated doctrine seems to us conclusive. We therefore overturn the cases establishing the *Enelow-Ettelson* rule and hold that orders granting or denying stays of "legal" proceedings on "equitable" grounds are not automatically appealable under § 1292(a)(1). This holding will not prevent interlocutory review of district court orders when such review is truly needed. Section 1292(a)(1) will, of course, continue to provide appellate jurisdiction over orders that grant or deny injunctions and orders that have the practical effect of granting

---

*(per curiam); Lee* v. *Ply\*Gem Industries, Inc.,* 193 U. S. App. D. C. 112, 115, 593 F. 2d 1266, 1269, cert. denied, 441 U. S. 967 (1979).

or denying injunctions and have " 'serious, perhaps irreparable, consequence.' " *Carson* v. *American Brands, Inc.*, 450 U. S. 79, 84 (1981), quoting *Baltimore Contractors, Inc.* v. *Bodinger, supra*, at 181. As for orders that were appealable under § 1292(a)(1) solely by virtue of the *Enelow-Ettelson* doctrine, they may, in appropriate circumstances, be reviewed under the collateral-order doctrine of § 1291, see *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.*, 460 U. S. 1 (1983), and the permissive appeal provision of § 1292(b),[12] as well as by application for writ of mandamus.[13] Our holding today merely prevents interlocutory review of district court orders on the basis of historical circumstances that have no relevance to modern litigation. Because we repudiate the *Enelow-Ettelson* doctrine, we reject petitioner's claim that the District Court's order in this case is appealable under § 1292(a)(1) pursuant to that doctrine.

## IV

Petitioner finally contends that if the order denying the motion for a stay or dismissal is not appealable, the Court of Appeals should have issued a writ of mandamus directing the

---

[12] Section 1292(b) states, in pertinent part:

"When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order . . . ."

Several Courts of Appeals have viewed Congress' enactment of § 1292(b), which occurred after the *Enelow* and *Ettelson* decisions, as further justification for abandoning the *Enelow-Ettelson* doctrine. See, *e. g., Olson* v. *Paine, Webber, Jackson & Curtis, Inc.*, 806 F. 2d 731, 738 (CA7 1986).

[13] Issuance of a writ of mandamus will be appropriate in exceptional cases involving stay orders. This Court has made clear, for example, that a stay order that deprives a party of the right to trial by jury is reversible by mandamus. See *Beacon Theatres, Inc.* v. *Westover*, 359 U. S. 500, 510–511 (1959).

District Court to vacate the order and grant the motion. In making this argument, petitioner points primarily to respondent's decision to eschew removal of the state-court action in favor of bringing a separate suit in federal court. Petitioner asserts that in the absence of "imperative circumstances" not present in this case, a district court must respond to this kind of conduct by staying or dismissing the action brought in that court. Brief for Petitioner 23. Refusal to do so, petitioner concludes, is a "demonstrable abuse of discretion" warranting the issuance of a writ of mandamus. *Id.*, at 5.

This Court repeatedly has observed that the writ of mandamus is an extraordinary remedy, to be reserved for extraordinary situations. See, *e. g.*, *Kerr* v. *United States District Court*, 426 U. S. 394, 402 (1976). The federal courts traditionally have used the writ only "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche* v. *Evaporated Milk Assn.*, 319 U. S. 21, 26 (1943). In accord with this historic practice, we have held that only "exceptional circumstances amounting to a judicial 'usurpation of power'" will justify issuance of the writ. *Will* v. *United States*, 389 U. S. 90, 95 (1967), quoting *De Beers Consol. Mines, Ltd.* v. *United States*, 325 U. S. 212, 217 (1945). Moreover, we have held that the party seeking mandamus has the "burden of showing that its right to issuance of the writ is 'clear and indisputable.'" *Bankers Life & Cas. Co.* v. *Holland*, 346 U. S. 379, 384 (1953), quoting *United States* v. *Duell*, 172 U. S. 576, 582 (1899).

Petitioner has failed to satisfy this stringent standard.[14] This Court held in *Colorado River* that a federal court should

---

[14] Because we find that petitioner has failed to demonstrate its right to a writ of mandamus, we need not consider whether the Court of Appeals acted appropriately in declining to treat petitioner's notice of appeal as an application for the writ. The Courts of Appeals have responded in divergent ways to requests from a party to convert a notice of appeal into a peti-

stay or dismiss an action because of the pendency of a concurrent state-court proceeding only in "exceptional" circumstances, 424 U. S., at 818, and with "the clearest of justifications," *id.*, at 819. Petitioner has failed to show that the District Court clearly overstepped its authority in holding that the circumstances of this case were not so exceptional as to warrant a stay or dismissal under *Colorado River.* This Court never has intimated acceptance of petitioner's view that the decision of a party to spurn removal and bring a separate suit in federal court invariably warrants the stay or dismissal of the suit under the *Colorado River* doctrine. More-, over, petitioner has pointed to no other circumstance in this case that would require a federal court to stay the litigation. Petitioner therefore has failed to show that the District Court's order denying a stay or dismissal of the federal-court suit warranted the issuance of a writ of mandamus.

## V

The District Court's order denying petitioner's motion to stay or dismiss respondent's suit because of the pendency of similar litigation in state court was not immediately appealable under § 1291 or § 1292(a)(1). In addition, the District Court's order did not call for the issuance of a writ of mandamus. Accordingly, the judgment of the Court of Appeals is affirmed.

*It is so ordered.*

JUSTICE KENNEDY took no part in the consideration or decision of this case.

JUSTICE SCALIA, concurring.

I join the Court's opinion, but write separately principally to express what seems to me a necessary addition to the anal-

---

tion for mandamus. See, *e. g., In re Harmon,* 425 F. 2d 916 (CA1 1970) (treating a notice of appeal as a request for permission to file a petition for mandamus); *Wilkins* v. *Erickson,* 484 F. 2d 969 (CA8 1973) (treating a notice of appeal as a petition for mandamus); 806 F. 2d 928 (CA9 1987) (case below) (treating a notice of appeal as a petition for mandamus only if party shows serious hardship or prejudice). We take no position on this matter.

ysis in Part II. While I agree that the present order does not come within the *Cohen* exception to the final-judgment rule under § 1291, I think it oversimplifies somewhat to assign as the reason merely that the order is "inherently tentative." A categorical order otherwise qualifying for *Cohen* treatment does not necessarily lose that status, and become "nonfinal," merely because the court may contemplate—or even, for that matter, invite—renewal of the aggrieved party's request for relief at a later date. The claim to *immediate* relief (in this case, the right to be free of the obstruction of a parallel federal proceeding) is categorically and irretrievably denied. The court's decision *is* "the final word on the subject" insofar as the time period between the court's initial denial and its subsequent reconsideration of the renewed motion is concerned. Thus, it is inconceivable that we would hold denial of a motion to dismiss an indictment on grounds of absolute immunity (an order that is normally appealable at once, see *Nixon* v. *Fitzgerald*, 457 U. S. 731 (1982)), to be nonfinal and unappealable, simply because the court announces that it will reconsider the motion at the conclusion of the prosecution's case.

In my view, refusing to apply the *Cohen* exception makes little sense in the present case because not only (1) the motion is likely to be renewed and reconsidered, but also (2) the relief will be just as effective, or nearly as effective, if accorded at a later date—that is, the harm caused during the interval between initial denial and reconsideration will not be severe. Moreover, since these two conditions will almost always be met when the asserted basis for an initial stay motion is the pendency of state proceedings, the more general conclusion that initial orders denying *Colorado River* motions are never immediately appealable is justified.

I note that today's result could also be reached by application of the rule adopted by the First Circuit, that to come within the *Cohen* exception the issue on appeal must involve "'an important and unsettled question of controlling law, not merely a question of the proper exercise of the trial court's

discretion.'" *Boreri* v. *Fiat S. P. A.*, 763 F. 2d 17, 21 (1985), quoting *United States* v. *Sorren*, 605 F. 2d 1211, 1213 (1979). See also, *e. g.*, *Sobol* v. *Heckler Congressional Committee*, 709 F. 2d 129, 130–131 (1983); *Midway Mfg. Co.* v. *Omni Video Games, Inc.*, 668 F. 2d 70, 71 (1981); *In re Continental Investment Corp.*, 637 F. 2d 1, 4 (1980). This approach has some support in our opinions, see *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U. S. 541, 546 (1949); *Coopers & Lybrand* v. *Livesay*, 437 U. S. 463, 468 (1978), as well as in policy, see *Donlon Industries* v. *Forte*, 402 F. 2d 935, 937 (CA2 1968) (Friendly, J.) (when an issue is reviewable only on an abuse-of-discretion basis the "likelihood of reversal is too negligible to justify the delay and expense incident to an [immediate] appeal and the consequent burden on hard-pressed appellate courts"); *Midway Mfg. Co.*, *supra*, at 72 (questions of discretion "are less likely to be reversed and offer less reason for the appellate court to intervene"). This rationale has not been argued here, and we should not embrace it without full adversarial exploration of its consequences. I do think, however, that our finality jurisprudence is sorely in need of further limiting principles, so that *Cohen* appeals will be, as we originally announced they would be, a "small class [of decisions] . . . too important to be denied review." 337 U. S., at 546.