IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-20959
Summary Calendar

_____

ANTHONY NICHOLAS GEORGIOU; TILLER INTERNATIONAL LIMITED,

     Plaintiffs-Appellants,

  v.

MOBIL EXPLORATION AND PRODUCING SERVICES INC U.S., ETC; ET AL,

     Defendants,

MOBIL EXPLORATION AND PRODUCING SERVICES INC U.S., doing business
as Mobil E&P Ventures CIS; MOBIL OIL CORPORATION; METROMEDIA
INTERNATIONAL TELECOMMUNICATIONS INC,

     Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas
(H-98-CV-98)

_____

July 27, 1999

Before KING, Chief Judge, and EMILIO M. GARZA and DeMOSS, Circuit
Judges.

PER CURIAM:[*]

    Plaintiffs-appellants appeal from an order of the district

court staying litigation before the district court in favor of an

arbitration proceeding currently taking place in London.  Because

we conclude that we do not have jurisdiction to entertain this

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

appeal, we dismiss.  Furthermore, we deny plaintiffs-appellants'
alternative request for a writ of mandamus.

## I.  FACTUAL AND PROCEDURAL HISTORY

Plaintiff-appellant Tiller International Limited (Tiller)
and plaintiff-appellant Anthony Nicholas Georgiou (Georgiou)
(collectively, plaintiffs) brought this action in January 1998
seeking damages for breach of contract, fraud, civil conspiracy,
unfair business practices, and tortious interference with
contracts and prospective contracts.  Georgiou is a director of
Tiller.  Among several defendants named in the complaint were
defendants-appellees Mobil Exploration and Producing Services,
Inc. U.S. (MEPS) and Mobil Oil Corporation (Mobil) (collectively,
defendants).  MEPS is a wholly-owned subsidiary of Mobil.[1]

Plaintiffs' claims stem from the deterioration of a
contractual relationship between Tiller and MEPS.  In 1996, the
two entities entered into negotiations to form a joint venture
for purposes of developing oil and gas reserves in Siberia.  In
August 1996, MEPS and Tiller entered into a confidentiality
agreement.  In September 1996, they entered into a cooperation
agreement, and in February 1997 they entered into a participation
agreement.  All three agreements contain a broadly-worded
arbitration clause or a reference to one.  Specifically, the
confidentiality agreement provides that "[a]ny dispute arising

---

[1]  Also named as defendant was Metromedia International
Telecommunications Inc. (Metromedia).  Metromedia did not file an
appellate brief and has indicated that it adopts the position of
MEPS and Mobil.

out of or relating to this Agreement, including any question regarding its existence, validity or termination, which cannot be amicably resolved by the Parties, shall be referred to and finally resolved by arbitration under the rules of the London Court of International Arbitration in London, England." The cooperation agreement contains the same clause, and the participation agreement incorporates the clause by reference.

The relationship between MEPS and Tiller deteriorated in July 1997 when MEPS terminated its agreements with Tiller and instituted arbitration proceedings against Tiller before the London Court of International Arbitration. In the arbitration proceedings, MEPS sought an accounting of amounts paid and owing to Tiller, the repayment of amounts MEPS paid to Tiller to which MEPS claims Tiller was not entitled by reason of Tiller's alleged noncompliance with the agreements, and a declaration that no further sums are owed by MEPS to Tiller. MEPS also brought a claim for the tort of deceit based on alleged false representations by Tiller. Six months after MEPS instituted the arbitration proceedings, Tiller and Georgiou filed the above-described complaint in the district court.

Thereafter, in March 1998, defendants filed a motion in the district court to stay the case in favor of the London arbitration proceedings. On May 5, 1998, plaintiffs filed an amended complaint in which they alleged that MEPS had "fraudulently created and used said . . . agreements and specifically included arbitration clauses so as to minimize its

3

exposure to damage."  They further alleged that MEPS "deliberately and specifically procured the insertion of the arbitration clause in both the cooperation agreement and the participation agreement for the purpose[] [of minimizing its exposure to damage upon repudiation of the agreements] and thus plaintiffs allege the said arbitration clauses were fraudulently induced."[2]

On August 27, 1998, the district court granted defendants' motion for a stay pending the completion of the arbitration proceedings in London and directed plaintiffs to advise the court in writing within sixty days of the completion of arbitration should the case need to be reinstated.  In its order, the district court found that "[p]laintiffs' allegations that they were fraudulently induced to enter into the agreements are . . . arbitrable," and stayed the claims against all defendants, not just the claims against MEPS, even though the agreements run between MEPS and Tiller only, because "the arbitration will resolve a number of issues relating to claims against [d]efendant Mobil Oil Corporation and . . . a complete stay will avoid litigation of this matter on a piecemeal basis."

On September 11, 1998, plaintiffs filed a motion for reconsideration before the district court, arguing that the district court had ignored their allegations that the arbitration clauses were induced by fraud and had failed to consider that

---

[2]  Interestingly, plaintiffs have not raised their claims that the arbitration clauses were fraudulently induced in the arbitration proceedings currently underway in London.

4

several parties to the lawsuit were not parties to the arbitration agreements. By order dated October 8, 1998, the district court denied the motion for reconsideration, reasoning that it had in fact previously addressed plaintiffs' allegations that the arbitration clauses were induced by fraud when it concluded that plaintiffs' allegations of fraud were themselves arbitrable, and that it had granted the motion to stay against all parties to avoid piecemeal litigation. Plaintiffs filed their notice of appeal on October 19, 1998.

## II.  DISCUSSION

On appeal, plaintiffs argue that the district court erred in granting the motion to stay litigation pending arbitration because several defendants are not parties to the arbitration and because the district court placed no time limitation on the stay. Plaintiffs further argue that the district court erred in failing to address the issue of whether there is a valid agreement to arbitrate and whether the contracts as a whole were part of an overall scheme to defraud. Plaintiffs request that we reverse the stay as to all parties, or at least as to the parties not participating in the arbitration. Alternatively, plaintiffs request that we order the district court to place a reasonable time limitation on the duration of the stay.

Defendants contend that the district court did in fact consider all of plaintiffs' allegations and properly exercised its discretion in determining that a stay is warranted pending the outcome of the arbitration proceedings in London. Defendants

5

argue that plaintiffs never alleged any misrepresentations pertaining specifically to the arbitration clauses, but instead merely alleged fraudulent inducement of the contracts as a whole. According to defendants, the district court therefore properly found that the issue of fraudulent inducement was itself subject to arbitration. Defendants also argue that the district court properly exercised its discretion to stay all claims pending the results of the arbitration because the claims asserted against other litigants who are not parties to the arbitration are all closely related to the claims pending in the arbitration. Defendants argue that we need not reach these issues, however, because this court lacks jurisdiction to consider plaintiffs' appeal of the district court's order staying litigation pending arbitration. We agree.

We first address the issue of our jurisdiction. Section 3 of the Federal Arbitration Act (FAA) provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. The district court has no discretion to deny the stay if the issues in the case are within the scope of the arbitration agreement, at least with respect to the parties to that agreement. See Hornbeck Offshore (1984) Corp. v. Coastal

<u>Carriers Corp. (In re Complaint of Hornbeck Offshore (1984)</u>

<u>Corp.)</u>, 981 F.2d 752, 754 (5th Cir. 1993).  The district court,

in its discretion, may also stay the proceedings against other

parties not subject to the arbitration agreement pending the

outcome of arbitration as a means of controlling its docket.  <u>See</u>

<u>id.</u> at 755 (citing <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr.</u>

<u>Corp.</u>, 460 U.S. 1, 20 n.23 (1983)).

Section 16(b) of the FAA pertains to appeals and states that

"an appeal may not be taken from an interlocutory order . . .

granting a stay of any action under section 3 of this title."  9

U.S.C. § 16(b).  Thus, we must determine whether the district

court's order granting the stay constitutes an interlocutory

order from which an appeal may not be taken.

> "In determining whether an order affecting arbitration is
> final or interlocutory, most courts distinguish between
> arbitration actions that are independent and those that are
> embedded among other claims.  Generally, if the only issue
> before the court is the dispute's arbitrability, the action
> is considered independent and a court's decision on that
> issue constitutes a final decision.  If, however, the case
> includes other claims for relief, an arbitrability ruling
> does not end the litigation on the merits, but is considered
> interlocutory only."

<u>Ilva (USA), Inc. v. Alexander's Daring M/V</u>, 10 F.3d 255, 256 (5th

Cir. 1993) (quoting <u>McDermott Int'l, Inc. v. Underwriters at</u>

<u>Lloyds Subscribing to Memorandum of Ins. No. 104207</u>, 981 F.2d

744, 747 (5th Cir. 1993) (further internal quotation marks

omitted)).  Because plaintiffs have appealed from an order of the

district court staying litigation in favor of arbitration, and

because there are other issues before the court besides the

dispute's arbitrability, the plain language of § 16(b) of the FAA

7

denies this court jurisdiction to review the district court's
order. See Altman Nursing, Inc. v. Clay Capital Corp., 84 F.3d
769, 770-71 (5th Cir. 1996); McDermott, 981 F.2d at 747-48;
Turboff v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 867 F.2d
1518, 1520-21 (5th Cir. 1989).

Plaintiffs contend that because there are parties to the
dispute who are not parties to the arbitration proceedings, we
should reach a different conclusion with respect to our
jurisdiction. However, in both McDermott and West of England
Ship Owners Mutual Insurance Association (Luxembourg) v. American
Marine Corp., 981 F.2d 749 (5th Cir. 1993), the district court's
stay applied to parties not subject to arbitration, but we
nevertheless concluded that we lacked jurisdiction to review the
propriety of the stay. See West of England Ship Owners Mut. Ins.
Assoc., 981 F.2d at 750-51 ("[T]he district court . . . stayed
the proceeding as to all defendants, including those not subject
to the arbitration agreement. . . . [T]he orders were
interlocutory, and appeal is barred by § 16(b)."); McDermott, 981
F.2d at 748 (describing claims between parties not participating
in arbitration that were stayed by district court, but
nevertheless concluding that "[b]ecause the district court's
orders were interlocutory, not final, appeal is barred by
§ 16(b)"). Thus, plaintiffs' argument lacks merit.[3]

---

[3] Even were we to conclude that § 16(b) only denied us
jurisdiction to consider the appeal of parties to the
arbitration, we would still conclude that we lack jurisdiction to
consider the appeal of others not party to the arbitration in
this case because the appeal is interlocutory and, as described

8

Plaintiffs urge us to find 28 U.S.C. § 1292(a)(1) jurisdiction under the Supreme Court's decision in <u>Gulfstream Aerospace Corp. v. Mayacamas Corp.</u>, 485 U.S. 271 (1988). This argument is equally unavailing. In <u>Gulfstream</u>, the Supreme Court stated that a stay order, under very limited circumstances, may be appealed as an interlocutory order granting or refusing an injunction under 28 U.S.C. § 1292(a)(1). See <u>id.</u> at 287-88. Specifically, § 1292(a)(1) provides appellate jurisdiction "over orders that grant or deny injunctions and orders that have the practical effect of granting or denying injunctions and have serious, perhaps irreparable, consequence." <u>Id.</u> (internal quotation marks omitted). Plaintiffs argue that the district court's stay order has the practical effect of granting an injunction and will lead to serious, irreparable consequences. Even if we agreed with this contention, under our precedent, this avenue of review is foreclosed to plaintiffs after Congress amended the FAA to preclude our jurisdiction to review an interlocutory order that stays an action in district court pending arbitration. See <u>Turboff</u>, 867 F.2d at 1520-21 ("[Congress's amendment to the FAA] also eliminates any vestige of uncertainty surrounding the scope of <u>Gulfstream</u> . . . in arbitration cases. . . . Thus, in the absence of a § 1292(b) certificate from the district court, we have no jurisdiction over its interlocutory orders concerning arbitration."); <u>Jolley v. Paine Webber Jackson & Curtis, Inc.</u>, 864 F.2d 402, 404 (5th Cir.

<u>infra</u>, all other avenues of jurisdiction are foreclosed.

9

1989) ("Gulfstream held that orders granting or denying stays of legal proceedings on equitable grounds are not automatically appealable under § 1292(a)(1). . . . The district court's order granting a stay pending arbitration is not appealable under § 1292(a)(1).") (internal quotation marks, citation, and emphasis omitted), supplemented by 867 F.2d 891 (5th Cir. 1989).[4]

Next, plaintiffs rely on the collateral order doctrine in an attempt to establish a basis for our jurisdiction. We have jurisdiction to review a collateral order so long as the order "(1) conclusively determine[s] the disputed question; (2) resolve[s] an important issue completely separate from the merits of the action; and (3) [is] effectively unreviewable on appeal from a final judgment." Jolley, 864 F.2d at 404. In Jolley, we held that a district court order granting a stay pending arbitration is not appealable under the collateral order doctrine because such an order is reviewable on appeal from a final judgment, and thus does not meet the third requirement of the collateral order doctrine. See id. We reached this conclusion because the parties will have an opportunity to obtain a final judgment from the district court after arbitration and can then seek review of that final judgment. See id.; West of England Ship Owners Mut. Ins. Assoc., 981 F.2d at 751 & n.9.

---

[4] Moreover, in the event that Gulfstream is still applicable to an appeal of a discretionary stay by a party not subject to the arbitration agreement, we conclude that plaintiffs have not met the requirements of Gulfstream because they have not shown that serious or irreparable consequences will flow from the district court's stay order.

Plaintiffs argue that they will not have the opportunity to seek review after the arbitration concludes because the issues in the London arbitration are not the same as the issues at stake in the district court. According to plaintiffs, the issues in London are limited to those raised by MEPS and do not include the issues raised by plaintiffs in their federal court action. As defendants point out, however, plaintiffs have the opportunity to raise any of the claims that are currently pending in district court as counter-claims or defenses in the arbitration proceeding and may not complain that there will be no review of the issues that they have chosen not to raise for strategic reasons in arbitration. We therefore refuse to depart from our circuit precedent to allow plaintiffs to appeal the district court's stay under the collateral order doctrine.

Finally, plaintiffs seek our review of the district court's order via an application for writ of mandamus. A writ of mandamus is "an extraordinary remedy, reserved for extraordinary situations." McDermott, 981 F.2d at 748. We have traditionally exercised our mandamus power "only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" Id. (quoting Gulfstream, 485 U.S. at 289). Plaintiffs have the burden of demonstrating a "'clear and indisputable'" right to mandamus before we are authorized to issue a writ. Id. (quoting Gulfstream, 485 U.S. at 289). Because Congress has expressly limited interlocutory review of a district court's decision to

11

stay arbitration, plaintiffs bear a particularly heavy burden.
See id. Plaintiffs have failed to carry the burden in this case.
Contrary to plaintiffs' assertions, the district court did not
fail to consider their arguments, and did not clearly overstep
its authority in staying these proceedings pending the outcome of
the London arbitration. It is a well-established principle that
"a writ of mandamus is not to be used as a substitute for
appeal." Id. We therefore deny plaintiffs' application for the
writ and dismiss this appeal for lack of jurisdiction.

## III. CONCLUSION

For the foregoing reasons, we DISMISS plaintiffs' appeal for
lack of jurisdiction and DENY the application for writ of
mandamus.

12