231 F.3d 51

### In re: INTERNATIONAL UNION, UNITED MINE WORKERS OF AMERICA, Petitioner,

#### No. 00–1010.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 24, 2000.

Decided Nov. 17, 2000.

Judith Rivlin argued the cause for petitioner. With her on the brief was Grant Crandall.

Robin A. Rosenbluth, Attorney, United States Department of Labor, argued the cause for respondent. With her on the brief was W. Christian Schumann, Counsel.

Michael F. Duffy was on the brief for intervenor National Mining Association.

Before: EDWARDS, Chief Judge, ROGERS and GARLAND, Circuit Judges.

Opinion for the Court filed by Chief Judge EDWARDS.

HARRY T. EDWARDS, Chief Judge:

The United Mine Workers of America ("UMWA" or "Petitioner") petitioned this court for a writ of mandamus to compel the Mine Safety and Health Administration ("MSHA") of the Department of Labor to promulgate an emergency temporary standard, or in the alternative, to engage in rulemaking, to protect mine workers from exposure to respirable coal mine dust. UMWA premised its request on a claim that the agency had unreasonably delayed its rulemaking. Six months after UMWA filed its petition, MSHA published notices of two proposed rulemakings which, the agency contends, address the specific concerns raised by UMWA in its

petition. In light of the proposed rules, we conclude that petitioner's request for mandamus is moot.

Long-term exposure to excessive levels of respirable coal mine dust can cause coal workers' pneumoconiosis ("black lung") and silicosis, which are potentially disabling and can lead to premature death. *See* 65 Fed. Reg. 23,049, 23,051 (2000). In recognition of these dangers, the Federal Mine Safety and Health Act of 1977, § 101(a), 30 U.S.C. § 811(a) (1994), ("Mine Act") directs the Secretary of Labor ("Secretary") to develop, promulgate, and revise health and safety standards in coal and other mines.

In January 1995, the Secretary established an Advisory Committee on the Elimination of Pneumoconiosis Among Coal Mine Workers ("Advisory Committee") to "make recommendations ... for improved standards, or other appropriate actions," to eliminate pneumoconiosis and silicosis through the control of respirable coal mine dust. 60 Fed. Reg. 5947, 5948 (1995). Later that year, in September 1995, the National Institute for Occupational Safety and Health ("NIOSH") issued a criteria document recommending standards "to reduce or eliminate health impairment from exposure to respirable coal mine dust." EDUCATION AND INFORMATION DIVISION, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, PUB. NO. 95–106, CRITERIA FOR A RECOMMENDED STANDARD: OCCUPATIONAL EXPOSURE TO RESPIRABLE COAL MINE DUST 9 (1995) [hereinafter NIOSH Criteria Document].

MSHA published a response to the NIOSH Criteria Document on April 25, 1996, announcing its intentions to develop a proposed rule "derived from the recommendations in the Document" that would "address enhanced protections for surface and underground coal miners from exposure to respirable coal mine dust and crystalline silica." 61 Fed. Reg. 18,308 (1996). The agency stated that it would "defer full development" of the proposed rule until it could consider the recommendations of the Advisory Committee. *Id.* at 18,309.

The Advisory Committee submitted its report to the Secretary on November 14, 1996. *See* 62 Fed. Reg. 3717 (1997). The report contained 20 wide-ranging recommendations aimed at eliminating coal miners' pneumoconiosis and silicosis. *See* Advisory Committee on the Elimination of Pneumoconiosis Among Coal Mine Workers, Report of the Secretary of Labor's Advisory Committee on the Elimination of Pneumoconiosis Among Coal Mine Workers (Oct. 1996). On January 24, 1997, MSHA published a response to the Advisory Committee Report, stating that the agency was considering both rulemaking and other actions, such as internal administrative or policy changes. *See* 62 Fed. Reg. 3717 (1997). MSHA observed that "[m]any of the recommendations [were] general in nature and would require further development by MSHA to be suitable for publication as a proposed rule." *Id.*

On January 13, 2000, UMWA petitioned this court to compel MSHA to issue an emergency temporary standard to protect miners, or to engage in rulemaking to address a subset of the recommendations proposed by the Advisory Committee. In particular, UMWA proposed: (1) that MSHA assume full responsibility for all respirable coal mine dust compliance sampling; (2) that there be continuous monitoring for respirable coal mine dust; (3) that miners have full rights to participate in the dust sampling program; and (4) that sampling contemplate miners' full exposure to respirable dust (*i.e.* beyond 8 hours per day and 40 hours per week).

On July 7, 2000, the Secretary published notices of two proposed rulemakings aimed at restructuring the respirable dust program for underground coal mines. Specifically, the proposed rules would (i) permit MSHA to use a single, full-shift sample to determine whether coal mine operators are in compliance with the permissible exposure limit for respirable coal mine dust, *see* 65 Fed. Reg. 42,068 (2000) (to be codified

at 30 C.F.R. pt. 72) (proposed July 7, 2000), and (ii) require each underground coal mine operator to have a verified mine ventilation plan. *See* 65 Fed. Reg. 42,122 (2000) (to be codified at 30 C.F.R. pts. 70, 75, 90) (proposed July 7, 2000). According to the Secretary, all of the concerns raised by the UMWA petition are within the compass of the proposed rulemakings. Indeed, the Federal Register notice does address each of the four UMWA proposals. *See* 65 Fed. Reg. at 42,129, 42,133 (proposing that MSHA assume full responsibility for all compliance sampling); *id.* at 42,138–39 (determining that technology has not yet advanced to the point that promulgation of a rule requiring continuous monitoring for respirable coal mine dust would be appropriate); *id.* at 42,129, 42,134 and n.4 (proposing that miners' representatives have participation rights in the dust sampling program); *id.* at 42,140, 42,141 (proposing definitions of terms "concentration" and "full shift" intended to assure that sampling contemplates miners' full exposure to respirable dust).

■ Under section 101(b)(1) of the Mine Act, 30 U.S.C. § 811(b)(1) (1994), the Secretary must issue an emergency temporary standard if she finds that "miners are exposed to grave danger" and that an "emergency standard is necessary to protect miners from such danger." It is undisputed here that respirable coal mine dust is a serious occupational hazard in the mining industry. *See* 65 Fed. Reg. 23,049, 23,051 (2000). Nonetheless, we find that UMWA has failed to satisfy its burden of showing that an emergency temporary standard is warranted at this time. *See Northern States Power Co. v. United States Dep't of Energy*, 128 F.3d 754, 758 (D.C.Cir.1997) ("The party seeking mandamus has the burden of showing that 'its right to issuance of the writ is clear and indisputable.'" (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988))), *cert. denied*, 525 U.S. 1016, 119 S.Ct. 540, 142 L.Ed.2d 449 (1998). It is far

from clear at this juncture what standards should be adopted to address the problem of respirable coal mine dust. This is a matter that is committed to the agency's expertise in the first instance, and this court is in no position to pretermit the prescribed statutory process. UMWA's request for an emergency temporary standard must therefore be denied.

■ It is unnecessary for us to reach the merits of petitioner's claim that MSHA has unreasonably delayed rulemaking on respirable coal mine dust. An agency's notice of proposed rulemaking necessarily moots a petitioner's claim of unreasonable delay if that claim is based upon (1) a period of delay occurring prior to the agency's issuance of a notice of proposed rulemaking, and (2) a matter that the agency proposes to regulate in that rulemaking. *See Action on Smoking and Health v. Department of Labor*, 28 F.3d 162, 164 (D.C.Cir.1994); *United Steelworkers of America v. Rubber Mfrs. Ass'n*, 783 F.2d 1117, 1120 (D.C.Cir.1986). Six months after UMWA filed its petition to compel MSHA to promulgate four standards recommended by the Secretary's Advisory Committee, the agency issued two notices of proposed rulemaking. Although the UMWA disputes the sufficiency of the manner in which the agency has addressed its concerns, it would be premature for us to consider its objections to the merits of the proposed rules. *See Action on Smoking and Health*, 28 F.3d at 165. Agency counsel conceded at oral argument that the standards sought by UMWA could be a "logical outgrowth" of the proposed rules. We agree. Accordingly, we find that petitioner's claim of unreasonable delay is moot.

The agency acknowledges that it has 90 days within which to "promulgate, modify, or revoke" the proposed standards, and "publish [the] reasons therefor." 30 U.S.C. § 811(a)(4)(B) (1994). In the event that the agency fails to act within the statutory period, UMWA may file a peti-

tion for review under *Telecommunications Research and Action Center v. FCC ("TRAC")*, 750 F.2d 70 (D.C.Cir.1984). And, of course, UMWA and other parties with standing may seek judicial review of the final rules adopted by the agency in the event that they object to the outcome of the rulemakings.

For all of the foregoing reasons, the petition for a writ of mandamus is denied.