ORIENTAL COMMERCIAL & SHIPPING CO., (U.K.), LTD., Oriental Commercial & Shipping Co., Ltd. and Abdul Hamid Bokhari, Plaintiffs,

v.

ROSSEEL, N.V., Defendant.

No. 90 Civ. 6127 (RWS).

United States District Court, S.D. New York.

July 12, 1991.

Lesser & Harrison (S. David Harrison, of counsel), New York City, for plaintiffs.

Baker & McKenzie (Arthur W. Rovine, Grant Hanessian, of counsel), New York City, for defendant.

OPINION

SWEET, District Judge.

Defendant Rosseel, N.V. ("Rosseel") has moved pursuant to Rule 12(b)(6), Fed.R.Civ.

P., to dismiss the complaint of plaintiffs Oriental Commercial & Shipping Co. (U.K.), Ltd. ("OC & S–UK"), Oriental Commercial & Shipping Co., Ltd., ("OC & S") and Abdul Hamid Bokhari ("Bokhari") (collectively, "Oriental"), or in the alternative, for summary judgment under Rule 56. For the following reasons, the motion for summary judgment is granted and the complaint is dismissed.

### The Parties

OC & S is a Saudi Arabian corporation engaged in the petroleum business. OC & S–UK is an English corporation affiliated with OC & S. Bokhari is a citizen and resident of Saudi Arabia and is the principal owner of both OC & S and OC & S–UK. Rosseel is a Belgian corporation also engaged in the petroleum business.

### The Facts

In 1984, OC & S–UK and Rosseel entered into a contract for the sale of oil. When the transaction was not completed as planned, Rosseel sought arbitration in New York pursuant to an arbitration clause in the contract. In support of this goal, Rosseel applied to the Honorable Peter K. Leisure of this district for an order compelling OC & S–UK to submit to arbitration. OC & S–UK resisted this application on the grounds that the arbitration clause was unenforceable. After Judge Leisure granted Rosseel's request, *Oriental Commercial & Shipping Co. v. Rosseel, N.V.*, 609 F.Supp. 75 (S.D.N.Y.1985), Rosseel sought to join OC & S and Bokhari as parties to the arbitration, asserting that they were principals of OC & S–UK. Oriental thereupon sought a further stay of the arbitration on the grounds that only OC & S and Bokhari were not subject to the terms of the contract. After an evidentiary hearing on the issue, Judge Leisure denied the request for the stay on December 19, 1988. *Oriental Commercial & Shipping Co. v.*

*Rosseel, N.V.*, 702 F.Supp. 1005 (S.D.N.Y.1988) ("the December Opinion").

Oriental filed a timely notice of appeal of the December Opinion. However, during a pre-argument conference in connection with the appeal the Staff Counsel for the Second Circuit suggested that the Circuit Court lacked jurisdiction over the appeal and Oriental agreed to withdraw it. However, in order to preserve its rights for future resolution, Oriental insisted on the addition of a stipulation to the standard Second Circuit form for withdrawing an appeal. The language agreed upon read as follows:

> The parties agree that any proceedings to confirm or vacate the arbitration award will be brought in the U.S.D.C., S.D.N.Y. In any appeal therefrom, the issues sought to be raised here can be raised at that time.

("the Stipulation"). After both parties had signed the form, it was filed with the Clerk of the Circuit Court and marked "SO ORDERED" by the clerk on May 15, 1989.

On May 11, 1989, Judge Leisure filed an order dismissing the case in light of the December Opinion, 125 F.R.D. 398. Oriental filed a second appeal from this order, but again agreed to withdraw it on the same terms, by means of a second stipulation identical to the one entered on May 15.[1]

The arbitration between Rosseel and OC & S–UK, OC & S and Bokhari took place in January and May, 1990, and in June the arbitrators awarded Rosseel over $4 million. An amended award was issued on August 16, 1990 ("the Award").

Thereafter,[2] Rosseel initiated proceedings before the High Court of Justice in London ("the London Action") seeking to enforce the Award under the provisions of the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"). Oriental ar-

---

**1.** As discussed below, Oriental's initial appeal of the order compelling arbitration was untimely in light of 9 U.S.C. § 16. It is not at all clear that the same conclusion would have applied to the appeal from the judgment dismissing the case. *See* 9 U.S.C. § 16(a)(3) (permitting appeal

from "a final decision with respect to an arbitration that is subject to this title").

**2.** It is not clear from the record whether the London action was filed before or after the arbitrators issued the amended award in August.

gued that this action was barred by the Stipulation, which required Rosseel to seek confirmation of the award in the Southern District of New York before attempting to enforce it abroad. After reviewing the language of the Stipulation and the other evidence presented and arguments raised by Oriental, the High Court ruled that Stipulation did not bar Rosseel's action and proceeded to grant the application to enforce the award. *Rosseel, N.V. v. Oriental Commercial & Shipping Co.*, 1990 Folio No. 1623 (Q.B. decided Oct. 5, 1990) ("the London Judgment").

During the pendency of the London action, Oriental filed the present complaint, seeking declaratory judgment that the London Action was barred by the Stipulation, that Rosseel was required to seek confirmation of the Award in this jurisdiction and that the Award was not binding on the parties until such confirmation was granted. Oriental's stated goal in this proceeding is to preclude Rosseel from recovering on the Award until Oriental obtains appellate review of Judge Leisure's rulings enforcing the arbitration clause and extending its reach to OC & S and Bokhari. Oriental did not move to vacate the Award and its time to do so has expired.

Rosseel filed the present motion on January 29, 1991, and it was argued and fully submitted on March 8, 1991.

*Discussion*

Rosseel's motion seeks dismissal of the complaint or summary judgment. Because both sides have submitted affidavits and have relied on materials outside of the pleadings, the motion will be treated as one for summary judgment.

The standards for summary judgment are well-known. The court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Summary judgment is warranted only if

"the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510.

1. Arbitration Terminology and Procedure.

■ Of primary importance in this case is the distinction between confirming an arbitral award and enforcing one. As the High Court explained, before the Convention was adopted a party seeking to enforce an arbitration award rendered in one jurisdiction against a defendant in a second jurisdiction was generally required to seek leave to enforce the award in both the rendering jurisdiction and the enforcing jurisdiction. London Judgment at 5. Under the Convention, it is no longer necessary to seek leave to enforce in the rendering jurisdiction: the party seeking to enforce an award may proceed directly to the jurisdiction in which it wishes to enforce the award and may apply directly to that jurisdiction's court for an order of enforcement. *Id.* at 6.[3]

Thus, with the advent of the Convention, a party to an American arbitration which seeks to enforce the award abroad need not seek any order from an American court. Therefore, confirmation proceedings in federal court are now usually filed only where the prevailing party seeks to enforce the award in this country, when the Convention procedures would be of no assistance.

The Second Circuit has explained the difference between an action to enforce a foreign arbitral award under the Convention and one to enforce a foreign judgment confirming an arbitral award, which must proceed according to the normal rules for the enforcement of foreign judgments. *See Island Territory of Curacao v. Solitron Devices, Inc.*, 489 F.2d 1313, 1319 (2d Cir.1973); *Victrix Steamship Co. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713–14 nn. 2 & 3 (2d Cir.1987); *Waterside Ocean Navigation Co. v. International Navigation, Ltd.*, 737 F.2d 150, 154 (2d Cir.1984). In

---

**3.** In addition, a party may often avoid relying on the Convention by applying in the rendering jurisdiction for an order confirming the award, which converts the award into a judgment which may be enforced abroad under the appropriate procedures for enforcement of foreign judgments.

both of the latter two cases, the court specifically commented that even after an award had been confirmed in the foreign jurisdiction—making it enforceable as a foreign judgment—it was still enforceable as a foreign award under the Convention; the foreign confirmation had simply increased the options available to the enforcing party. It is not clear whether such a broad approach to enforcement would be adopted by the United Kingdom. During oral argument, Rosseel suggested that it would not be, that confirmation here would have irrevocably converted the Award to a judgment and made it impossible to enforce it as an award under the Convention, although it has cited no authority in support of this contention.

Thus in the absence of the Stipulation there would be no question as to the propriety of Rosseel's action in refraining from further proceedings in this jurisdiction and instituting the London Action to enforce its award. The only remaining question is whether the Stipulation altered this conclusion.

### 2. The Stipulation is Not Ambiguous.

Oriental's primary argument is that the language of the Stipulation is ambiguous, and that the parties specifically agreed that there would be post-award proceedings in this district. Rosseel contends that the Stipulation is unequivocal, albeit somewhat open-ended, and that the choice not to seek confirmation before applying for enforcement in London was not a violation of the agreement between the parties.

Rosseel argues that the Stipulation simply specifies that if Rosseel elected to confirm the Award then the action would be brought in this district. Oriental concedes, as it must, that the Stipulation is at least susceptible to this interpretation, but asserts that other interpretations are also possible, and that the inherent ambiguity

entitles it to introduce parol evidence to support its proposed construction.

Oriental argues that the first sentence of the Stipulation—"any proceedings to confirm or vacate the arbitration award will be brought in the U.S.D.C., S.D.N.Y."—can and should be interpreted to compel Rosseel to seek confirmation in this jurisdiction. In the absence of some specific language indicating that the parties intended by their agreement to create a condition that further proceedings would necessarily take place, the first sentence is most naturally understood as identifying the proper forum for any actions for confirmation or vacation of the Award which either party elected to bring, with no requirement that any such action be brought at all.[4]

In further support of its position, Oriental asserts that it believed at the time it signed the Stipulation that the agreement did require a post-award proceeding to be brought in this court, and that to read the language as narrowly as Rosseel does would render the Stipulation virtually meaningless. However, where the language of a contract is itself unambiguous, neither the intention of the parties nor the possibly unintended and unfortunate consequences of enforcing the agreement according to its terms offers a basis for modifying those terms. *Waterman Steamship Corp. v. United States*, 595 F.2d 91, 96 (2d Cir.1979); *United States v. 0.35 of an Acre of Land, Westchester County*, 706 F.Supp. 1064, 1070 (S.D.N.Y.1988). Because the Stipulation cannot be considered ambiguous, this evidence is irrelevant and therefore summary judgment in Rosseel's favor is appropriate.

### 3. Oriental's Evidence Does Not Support Its Interpretation of the Stipulation.

Even if, contrary to the preceding determination, it were found that the language of the Stipulation was ambiguous, Oriental has not adduced evidence which would es-

---

**4.** Under Oriental's suggested interpretation, it would seem that the Stipulation also required Oriental to seek to vacate the Award, a step which it elected not to take. Oriental claims that it could not have filed an action to vacate because, aside from objecting to Judge Leisure's

order compelling OC & S and Bokhari to participate in the arbitration it could find no fault with the conduct of the arbitration itself. Therefore, it claims, an action to vacate would have been frivolous and would have subjected it to sanctions under Rule 11, Fed.R.Civ.P.

tablish that its interpretation should apply. With respect to the parties' intention at the time the Stipulation was signed, there is evidence that prior to the signing of the second Stipulation, Oriental's counsel had been put on notice of the alleged ambiguity. In the London Action, Oriental's New York counsel submitted an affidavit in which he stated that Counsel for Rosseel had, prior to the arbitration, suggested that Rosseel might seek enforcement of any award in London rather than confirmation in New York:

> One of the grounds which I put forward then was the agreement contained in the Joint Stipulation and I went on to say that I could see no justification in the light of the Joint Stipulation for Rosseel to apply to the English Court to confirm *or give effect to an award* in its favour, such application falling [*sic*] to be taken in the District Court. I made that point well before Rosseel obtained its arbitration award, and indeed *before the second Joint Stipulation was entered into.*

September 1, 1990 Affidavit of S. David Harrison ¶ 20 (emphasis added). Thus even before it signed the Stipulation withdrawing its second appeal, Oriental had been place on notice that Rosseel believed that it could seek to "give effect to an award," abroad without seeking confirmation in this jurisdiction. In these circumstances, Oriental should have sought to clarify or amend the language of the second Stipulation if it believed that such an action was barred by the parties' agreement. Its failure to do so belies its assertion that it intended such an interpretations when it entered the Stipulation.

Oriental's second argument in support of its construction of the Stipulation is that under Rosseel's interpretation the Stipulation is virtually meaningless. Because the only real connection between any of the parties and the United States was the location of the arbitration in New York, Oriental asserts that even without the Stipulation any proceedings to confirm or vacate would naturally take place in this forum. Therefore, Oriental claims, the Stipulation must have had a purpose beyond identifying the proper forum, and that purpose was to require that an action to confirm or vacate would be filed.

■ While it is true that under Rosseel's interpretation the Stipulation may have little meaning,[5] this fact does not offer much support to Oriental. In order to interpret the Stipulation it is necessary to consider each party's position at the time the agreement was signed. As mentioned above, Oriental was informed after filing its notice of appeal that there was no appellate jurisdiction over the orders compelling it to submit to arbitration. Oriental claims that this jurisdictional defect was the result of the then-recent enactment of 9 U.S.C. § 16 (originally enacted as § 15),[6] and in fact specifically represented to the High Court of Justice that prior to the November, 1988 enactment of this statute, "the Circuit Court would undoubtedly have had jurisdiction over such an appeal." Harrison Aff. ¶ 7. This assertion is incorrect. Section 16 was enacted to codify the law which already existed in this Circuit, under which there was no appeal from an order compelling arbitration. *See Steele v. L.F. Rothschild & Co.,* 864 F.2d 1, 3 (2d Cir.1988); *see also Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988) (repudiating *Enelow–Ettelson* doctrine under which

---

**5.** Of course, Oriental's argument does not even consider the effect of the second sentence of the Stipulation, which guaranteed that if any post-award action were brought in this court then Oriental would be permitted to raise its objections to Judge Leisure's orders on an appeal from that action.

**6. Appeals**

(b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order—

(1) granting a stay of any action under section 3 of this title;

(2) directing arbitration to proceed under section 4 of this title;

(3) compelling arbitration under section 206 of this title; or

(4) refusing to enjoin an arbitration that is subject to this title.

such orders were considered injunctive and appealable under 28 U.S.C. § 1292(a)(1)); *cf. McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co.*, 849 F.2d 761, 764 (2d Cir.1988) (under *Gulfstream* prior to enactment of § 16 order denying arbitration was not appealable).

Thus in "agreeing" to withdraw its appeal Oriental gave up nothing to which it was legally entitled. That being the case, there is no reason to believe that Rosseel would have consented to a requirement binding it to take some post-award action in this forum, as it would have nothing to gain by such a move. This is the same conclusion reached by the High Court in the London Action. In discussing Oriental's proposed interpretation of the Stipulation, the court commented that

> [That interpretation] would be an extraordinary one. It [would involve Rosseel] giving up valuable rights under an otherwise binding award for no consideration of substance. From [Rosseel's] point of view there was no commercial justification for such a stipulation.

London Judgment at 7–8.

Therefore, even if the Stipulation were found to be ambiguous, Oriental's evidence as to the party's intentions in signing the Stipulation would not be sufficient to establish that the agreement was intended to require a post-award action to be brought in this district, and therefore summary judgment is appropriate.[7]

*Conclusion*

Oriental's error in this case was in not filing a timely motion to vacate the Award. Particularly when it became clear that Rosseel did not intend to seek confirmation in this jurisdiction, a motion to vacate would have been the proper vehicle for reopening the prior proceedings and for obtaining appellate review of the prior orders of Judge Leisure compelling OC & S and Bokhari to participate in the arbitration. Although a motion to vacate is not generally to be encouraged where the losing party dis-

claims any basis for the motion, given the context of this case and the course of prior proceedings it would not have been improper for Oriental to have made such a motion, which would have obviated the problem here.

For all of the foregoing reasons, Oriental has failed to present evidence sufficient to establish that the Stipulation required Rosseel to bring a confirmation action in this district or that the Award was not intended to be binding until such a proceeding had been brought. Therefore, Rosseel's motion for summary judgment dismissing the complaint is granted.

It is so ordered.

---

**7.** As Rosseel's motion to dismiss Oriental's complaint on the merits is granted, it is not necessary to consider whether the London Judgment and its consideration of the arguments raised here by Oriental might constitute *res judicata* or might collaterally estop Oriental from relitigating the issues in this case.